MaddeN, Judge,
delivered the opinion of the court:
The plaintiff, a preference eligible under the Veterans’ Preference Act of 1944, 5 U.S.C. § 851, et seq., was employed as a Tax Collector by the Newark Office, Philadelphia Region, United States Internal Revenue Service, on November 28, 1955. In February 1956, the plaintiff’s income tax returns for the years 1952,1953, and 1954 were audited by an Internal Revenue Agent and it was found that he had failed to include in his income interest which had accrued on savings accounts in those years. Because of these omissions, additional taxes were assessed, and the plaintiff paid them. Thereafter, presumably in April 1956, the plaintiff filed his return for the year 1955, and again failed to include savings account interest credited to him by banks in 1955.
*27 In September 1956 the plaintiff was called before an official of the Internal Revenue Inspection Service and questioned about the omission of the interest income in his returns for 1952, 1953, and 1954. His return for 1955 had not yet been audited at that time. In January 1957 the plaintiff was questioned by two Special Agents of the Internal Revenue Service as to the interest income not reported for the years 1952-1955. The 1955 return was audited in April 1957 and additional taxes were assessed and paid. No fraud penalty was imposed and no prosecution for violation of the Internal Revenue laws was ever instituted against the plaintiff for any of the omissions referred to above.
On May 7,1957, the plaintiff received a letter, a “Notice of Proposed Adverse Action” from the District Director of Internal Revenue, Newark, New Jersey, proposing to discharge the plaintiff from the Service at or after the end of 30 days from the plaintiff’s receipt of the notice. The letter contained charges and specifications forming the basis of the proposed discharge. The plaintiff replied to the charges in writing and at an interview on May 21 with the Director and two of his assistants. At this interview the plaintiff was represented by counsel.
On June 11 the plaintiff received a letter from the District Director advising him that the charges were sustained and that he would be discharged effective June 14, 1957. The plaintiff was removed from the Service on that date. He appealed to the Regional Director of the Civil Service Commission. That official held a hearing and sustained the action of the Internal Revenue Service. The plaintiff then appealed to the Board of Appeals and Review of the Civil Service Commission. That Board affirmed the decision of the Regional Director. The plaintiff thereupon brought this suit.
The plaintiff asserts that the action of the District Director of Internal Revenue discharging the plaintiff was arbitrary and capricious, and was procedurally defective.
The plaintiff’s discharge was based upon his failure to include interest income in his income tax returns, and upon his statements made to an Inspector, to two Special Agents, and to the Regional Director and his assistants. The statements *28 indicated that the plaintiff was aware, when he omitted the interest income from his return, that he should have included it, but that he thought it was a rather usual practice of taxpayers not to include such income, and he therefore omitted it. As to the 1955 return, made after the omissions in the prior years had been called to his attention, his answer was, in effect, that one does not always give heed to warnings which one has received.
The plaintiff asserts, as a procedural defect, the provisions of a detailed directive, issued by the Office of the Regional Commissioner of the Philadelphia Region as RC-PHI-Memorandum No. 19-3, Revised (July 14, 1955). The memorandum was entitled “ADVERSE ACTIONS” and covered in minute detail the steps to be taken to accomplish any degree of adverse action against an employee, from oral admonishment to discharge. It said, in its “Section 9. Procedures” that when a conduct investigation had been initiated, the Regional Inspector would submit reports of the investigation to the Regional Commissioner on all persons employed under the Regional Commissioner’s jurisdiction, and that from the Regional Commissioner’s Office reports disclosing derogatory information about employees whom the District Director had authority to appoint, would be forwarded to the District Offices. The memorandum said, in section 9 (.02) (2) that a report so forwarded from the Regional Office to a District Office will “contain a recommendation by the Regional Office of action to be taken only when the appropriate penalty is considered to be removal.” It then says that if the District Director concurs with the Regional Office’s recommendation of removal, he may accomplish the removal, except that even then the proposed letter of removal must, before issuance, be submitted to the Regional Office for prior review and clearance.
We gather from the above summarized provisions, and from other provisions in the memorandum, that the Regional Commissioner was insistent that there should be uniformity of disciplinary action in the several Districts within his Region, and that he was keeping close supervision over the removal of employees. According to the memorandum, if he sent to a District Director a report of investigation contain *29 ing derogatory information about an employee, and did not recommend removal, that would amount to an expression of tlie opinion that the report did not justify removal. That opinion of the Regional Commissioner would, naturally, carry great weight with his subordinate, the District Director.
In the plaintiff’s case, the provisions of the memorandum discussed above were not followed. The report or reports of investigation did not pass through the Regional Commissioner’s office and he had no opportunity to make a recommendation.
The plaintiff was a young married man, 32 years old at the time of his discharge in 1957. He went to elementary school for eight years, then to a trade school for three years, then into the Navy. Upon his release from the Navy he went to a night high school and a night college, and graduated from both. He must have been industrious and bright, to have carried out such a strenuous program for so many years. His work as a Tax Collector was satisfactory. He omitted the following amounts of interest from his income tax returns, $57.14 in 1952, $106.89 in 1953, $134.58 in 1954, and $213.12 in 1955. His answers to questions as to why he had omitted these items were completely unconvincing.
Was the failure of the Internal Revenue Service to comply with its own regulations a mere failure to comply with a formality, or was it, in the plaintiff’s case, an omission prejudicial to the plaintiff? To know whether it, in fact, affected the ultimate decision in the plaintiff’s case, one would have to know whether the Regional Commissioner, if the question had been presented to him, would have recommended dismissal of the plaintiff. Since that question cannot be answered, we must proceed upon what we do know. We know that the Regional Commissioner would have been faced with the problem of whether this competent and, in general, deserving young man, who had shown serious deficiencies in his attitude toward the responsible public position which he held, was nevertheless salvageable and worth saving. The Regional Commissioner would have had a broad discretion in the matter, with many different kinds of disciplinary action at his disposal. We think there is enough of a probability that the Regional Commissioner would not have recom *30 mended tbe discharge of the plaintiff to require us to say that the plaintiff was deprived of a substantial and important right when the Internal Revenue Service failed to follow the procedures prescribed by its own regulations.
The Government says that Memorandum No. 19-3 was not complied with because it was not applicable; that a wholly different Memorandum No. 18-7 was applicable, and was complied with. Memorandum No. 19-3 is, as we have seen, titled “Adverse Actions”. Its section 3 defines its “scope” as applying to all personnel throughout the region except in three designated situations. The only conceivably pertinent one of the three named exceptions is described as
Actions against employees under the provisions of Executive Order 10450, dated April 27,1953, relative to security. (See RC-PHI-Memorandum No. 18-7 Revised, dated May 3,1955, covering this subject.)
We do not think that the charges against the plaintiff had anything to do with “security” as that word is used in this memorandum. Executive Order 10450 rel ated to the security of the country against subversion and sabotage, not to its efficiency in collecting income taxes. But, says the Government, Memorandum No. 18-7, although it is entitled “Personnel Security Procedures” and although its section 1, entitled “Purpose”, says:
This memorandum supplements certain of the provisions of Section (10)300 of the Internal Revenue Manual regarding Personnel Security Procedures.
nevertheless contains section 5, entitled “Suitability Decisions”, and the plaintiff was discharged for suitability reasons. We think that section 5, being a section in a memorandum devoted to security, takes color from its surroundings, and has to do with suitability from the standpoint of security. Examples, we suppose, would be persons of undoubted loyalty and ability who might nevertheless be “unsuitable” because of a tendency to get drunk and talk too freely, or who, because of a vice, or of having near relatives in an unfriendly country, might be the subjects of blackmail.
Finally, the Government says that even if Memorandum 18-7 is not very obviously applicable to the instant situation, *31 it is the one that was applied, and since the Government was the author of it, it is the one entitled to interpret it. This is not, of course, tolerable doctrine with regard to official Government regulations unless they are mere housekeeping directions, of no concern except to the Government.
The defendant’s motion for summary judgment is denied. The plaintiff’s similar motion is granted, and judgment will be entered for the plaintiff. The amount of recovery will be determined pursuant to Rule 38 (c).
It is so ordered.
Laramore, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on September 25, 1959, that judgment for the plaintiff be entered for $4,597.58.