WESTINGHOUSE ELECTRIC CORPO-
RATION (ELEVATOR DIVI-
SION), Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 11856.

United States Court of Appeals
Third Circuit.

Argued June 21, 1956.

Decided Sept. 25, 1956.

---

John G. Wayman, Pittsburgh, Pa. (Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for petitioner.

Edward Friedman, Atty., N. L. R. B., Washington, D. C. (Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, GOODRICH, Circuit Judge, and VAN DUSEN, District Judge.

BIGGS, Chief Judge.

Westinghouse Electric Corporation, Elevator Division, has petitioned this court, pursuant to Section 10(f) of the National Labor Relations Act, 1935, 49 Stat., 449, as amended and entitled the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., to set aside a cease and desist order issued against it on January 20, 1956 by the National Labor Relations Board. 1956, 115 N.L.R.B. ——.

Westinghouse employs at its Jersey City plant production and maintenance workers, paid by the hour; office, clerical and technical employees, all salaried workers; and professional employees as defined by the Act. Section 2(12), 29 U.S.C.A. § 152(12). The group of professionals includes one nurse and approximately 60 engineers. Since 1945, 25 of these engineers, known as methods engineers (time and motion study) and junior engineers (junior professionals), have been included, by their own determination, in the salaried unit for purposes of collective bargaining. The salaried unit, formerly represented by the United Electrical, Radio and Machine Workers of America (UE), is now represented by the International Union of Electrical, Radio and Machine Workers (IUE). See Westinghouse Electric Corp., 89 N.L.R.B. 8, 9, 33 (1950). The remaining engineers, the nurse, and a traffic analyst were never included in any unit for bargaining.

On January 11, 1955, the Association of Westinghouse Engineers, Elevator Division (AWE), filed a representation petition requesting a unit consisting of all the professional engineers in the Jersey City plant, except the methods engineers and junior engineers who, as we have indicated, for 10 years past had been included in the certified salaried unit and who were at that time covered by an IUE contract. AWE also petitioned for an alternative unit of such other

professional and technical employees as the Board might direct to be included. Westinghouse objected to the unit sought by AWE on the ground that it failed to include all the professionals at the plant, viz., the methods engineers, the junior engineers, application engineers in the order service department, the nurse, and the traffic analyst.

The Board found that a unit consisting of all the professional engineers at the plant, except the methods engineers and the junior engineers, constituted an appropriate unit for bargaining. The Board excluded the methods engineers and junior engineers on the ground that they were " * * * represented in a certified unit by a union [IUE] whose contract would bar a representation proceeding with respect to those categories." The Board excluded the nurse on the ground that her interests were unlike those of the professional engineers. The application engineers in the order service department and the traffic analyst were excluded because the Board concluded that employees in these categories were not shown to be professional employees within the meaning of Section 2(12) of the Act. The Board's determination is reported in 112 N.L.R.B. 590 (1955).

An election was held in the unit the Board had defined and AWE won it, 32 to 7. The AWE unit was certified but Westinghouse, contending that the unit was inappropriate, refused to bargain with it. In a subsequent proceeding, 1956, 115 N.L.R.B. ——, the Board reaffirmed its certification and found that Westinghouse was guilty of an unfair labor practice in refusing to bargain. See Section 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158(a) (5) and (1). The Board then issued the cease and desist order against Westinghouse now under review by this court.

The sole question in this case is the validity of the unit determination. Under Section 9(b) of the Act, 29 U.S.C.A. § 159(b), the Board has wide discretion in determining the unit appropriate for the purposes of collective bargaining. Where such determination is reasonable and not arbitrary it is binding on the reviewing court. N. L. R. B. v. Jones & Laughlin Steel Corp., 1947, 331 U.S. 416, 422, 67 S.Ct. 1274, 91 L. Ed. 1575; Pittsburgh Plate Glass Co. v. N. L. R. B., 1941, 313 U.S. 146, 152, 61 S.Ct. 908, 85 L.Ed. 1251.

Westinghouse contends that the Board exceeded its authority in the unit determination in that: (a) the unit is a residual unit allegedly improper under the Act, and based as a prime factor on the extent to which the engineers had organized; and (b) a unit of professional employees, as here, cannot be appropriate unless it includes all the professionals in the plant. We will consider these points in the order stated.

When the Board made the unit determination it referred to the unit as " * * * the residue of all unrepresented similar professional employees of the Employer at its Jersey City plant." Westinghouse Elec. Corp., 1955, 112 N.L.R.B. 590, 591. A residual unit consists of all employees in a plant not otherwise represented for the purposes of collective bargaining. Wilson H. Lee Co., 1952, 97 N.L.R.B. 1023, 1025. Westinghouse contends that a residual unit is contrary to Section 9 (c) (5) of the Act, 29 U.S.C.A. § 159 (c) (5) which provides: "In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling." The Board denies that the Act invalidates residual units, but we need not decide that question here for the facts make it plain that the unit was not a residual unit and that the extent to which the engineers had organized was not the controlling factor. It was not a residual unit for it excluded the nurse, the traffic analyst and the application engineers in the order service department. The engineers included in the unit were all professional employees as defined in Section 2(12) of the Act. There is no room to argue that the unit consisted of employees representing a

hotch-potch of job categories which might better be represented by separate units. The Board's description of this unit as residual was not accurate and does less than justice to the Board's own processes. We are of the view also that the extent of organization was not the controlling factor in determining the unit. The engineers included in the unit had a community or identity of interest and were professional employees as defined by the Act. These were the controlling factors of the determination as was evidenced by the employees whom the Board excluded from the unit. That the "extent of organization" was not the controlling factor is also demonstrated by the record which shows that the AWE would have consented to the inclusion of any other professional or technical employees as the Board might direct. The extent of organization may be a contributing factor in the determination of the unit so long as it is not the controlling factor. See Foreman & Clark, Inc., v. N. L. R. B., 9 Cir., 215 F.2d 396, 406, certiorari denied, 1954, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697. Cf. N. L. R. B. v. Glen Raven Knitting Mills, Inc., 4 Cir., 1956, 235 F.2d 413.

Westinghouse also contends that the Act requires all professionals in a plant to be included in one unit, and that the "community of interest" inquiry is no longer applicable to them because it is supplanted by the definition of "professional employee" contained in Section 2(12) of the Act. Westinghouse bases its contention on Section 9(b) of the amended Act, the pertinent parts of which provide: "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided,* That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes *both* professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; \* \* \*." (Emphasis supplied.)

■■ We cannot agree that this provision requires all the professionals in a plant to be squeezed into one bargaining unit. The obvious effect of the proviso is merely a limitation on the Board's power to create a mixed unit. The acceptance of Westinghouse's position would result in the negation of many recognized professional groups characterized by their specialty, e. g., the Architects and Draftsman's Union, AFL. Technical and scientific progress gives every promise of increasing the number of fields of professional employees as defined by Section 2(12) of the Act. Professional employees may possess advanced knowledge in specialized fields and engage in work predominantly intellectual and involving the exercise of discretion, but such qualities and performances do not necessarily standardize them as to job categories for collective bargaining purposes. The needs of such employees will vary widely and the Board must be permitted to exercise wide discretion.

■ The proviso of Section 9(b) (1) refers to a mixed unit and is not applicable here for the unit we are considering is composed of all professional employees. Such being the case we need not concern ourselves with the meaning of the words "a majority of such professional employees" which relate to the number of professionals necessary to vote for inclusion in a mixed unit.

■ We conclude by noting that the exclusions from the unit were reasonable. An examination of the record verifies the fact that the Board did not act arbitrarily in making them. The evidence offered as to the duties of the traffic analyst and of the application engineers in the order service department sustains the Board's conclusion that these employees were not professionals. The duties of the nurse are of such a nature that we cannot say the Board erred in excluding her from the unit.

While we have been somewhat troubled by the fact that the excluded methods engineers and junior engineers were professional employees with an identity of interest with those included in the unit, the long association of these engineers with the salaried unit, their existing contract with the IUE, and the fact that they may at a proper time in the future determine whether they will be included in the AWE unit, leads us to accept their present exclusion as justified. See Union Switch & Signal Co., 76 N.L.R.B. 205, 209 (1948).

The Board's order will be enforced.