**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MORGANTON FULL FASHIONED HO-SIERY COMPANY and Huffman Full Fashioned Hosiery Mills, Inc., Respondents.**

No. 7320.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1957.

Decided Feb. 27, 1957.

Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., Theophil C. Kammholz, Gen. Counsel; Stephen Leonard, Associate Gen. Counsel; Marcel Mallet-Prevost, Asst. Gen. Counsel, and Wil-

liam J. Avrutis, Atty., N. L. R. B., Washington, D. C., on brief), for petitioner.

Whiteford S. Blakeney, Charlotte, N. C. (Frank C. Patton; Mull & Patton, Morganton, N. C., and Blakeney & Alexander, Charlotte, N. C., on brief), for respondents.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOPER, Circuit Judge.

This petition for enforcement of an order of the National Labor Relations Board calls for consideration of a section of the Labor Act, 29 U.S.C.A. § 159 (c) (5) which provides that, in determining the appropriate unit of employees for purposes of collective bargaining, the extent to which the employees have organized shall not be controlling. We dismissed a similar petition for enforcement in N. L. R. B. v. Glen Raven Knitting Mills, Inc., 4 Cir., 235 F.2d 413, on the ground that the Board had failed to observe this provision of the Act, and the respondents contend that we should take like action in the instant proceeding.

Respondents have approximately 450 employees at the Morganton plant and 200 at the Huffman plant. There are 88 knitters and 42 knitters' helpers at Morganton; 125 knitters and 48 helpers at Huffman. Each plant also employs a small number of knitter-trainees. The knitting department at both plants operate on a three-shift, around-the-clock basis as do the pre-boarders and throwers at Morganton; the seamers, inspectors, dyers, and finishers, packers and shippers work only one shift. The Huffman plant is devoted almost exclusively to knitting; it also contains an office which is separated from the knitting room. At the Morganton plant, which is devoted to the full production of hosiery, the knitting room "is distinctly separate from the rest of the plant." The knitters are under separate supervision from the other employees, although there is a single plant superintendent over both plants. The knitters

also punch a different time clock from that used by the finishing employees. Respondents' policy is to hire and train only male knitters; a few women knitters have been "held over from the war," but respondents would like to eliminate women from the knitting department. All the seaming and most of the finishing operations are performed by women.

The knitters' wage rates are higher than those of the other employees. New wage rates are frequently instituted for knitters due to changes in hosiery styles, and the setting of a fair rate is a "complicated procedure" which "requires right careful study and careful negotiations." This "problem is really peculiar to the knitting employees." The knitters, unlike the other employees, work on large, heavy machines valued at from $35,000 to $40,000. The knitter-trainees or learners undergo a special apprenticeship training period of at least one year.

In 1952 the United Textile Workers of America represented all of respondents' production and maintenance employees in a single unit, but that union was decertified as the result of a Board election in January 1953, and since that time respondents' employees have not been represented by a labor organization.

In 1955 the American Federation of Hosiery Workers, AFL-CIO, the union involved in the present case, petitioned the Board to establish a bargaining unit consisting only of knitters, knitter-trainees and helpers. At the hearing the attorney for the union, in answer to a question by the examiner, stated that the union would not be at all interested in an over-all bargaining unit of employees, and would not go into an election for the establishment of such a unit. The companies' position was that the bargaining unit should include all the production employees since all of them participate in the process of manufacture. The Board found that the knitters, knitter-trainees and helpers "constitute a functionally distinct and homogeneous group of highly skilled employees with interests separate and apart from those of other employees," and accordingly de-

termined that a knitters' unit was appropriate. The union won the ensuing election and was duely certified by the Board as the bargaining representative. It then requested the respondents to bargain with it, but they refused, and the unfair labor practice proceeding now under review was instituted and the companies were directed to bargain with the union when requested to do so.

The companies contend that the undisputed facts of the case do not support this conclusion of the Board but, on the contrary, demonstrate that the Board's action was arbitrary and capricious. The Board characterized the selected group as composed of highly skilled employees, virtually all men, who undergo special training for the work and are paid higher wages than other employees, which are negotiated and fixed only after careful study of the problems peculiar to knitting employees. These statements were true, if confined to the class of workers who actually performed the knitting operation; but the unit set up by the Board was composed of 303 employees, of whom 90 were merely knitters' helpers, and all of these were women who were entirely unskilled and received only a minimum hourly wage and had no prospect of advancement. In view of these facts it is obvious that the sweeping statements of the Board are not descriptive of all members of the knitting unit. We do not think it follows, however, that on this account the action of the Board was indefensible. The choice of an appropriate unit lay with the Board, and we cannot say that it was arbitrary or unreasonable to establish a bargaining unit for the employees of a separate and distinct department of the plant, and to include in it all of the workers in the department, although a substantial number of them were unskilled and unqualified for advancement. It might well be found that the interests of all members of the group would be best served by a single representative.

The respondents' more important contention is that the essential facts of the present controversy, as in the Glen Raven case, point unerringly to the conclusion that the Board's determination was controlled by the extent to which respondents' employees had organized, and therefore should be condemned. Undoubtedly there is marked similarity in the two cases. In both the employees were engaged in the manufacture of ladies' full fashioned hosiery involving a variety of operations, superintended by one man, which included knitting performed by approximately one-third of the total number of employees. In both the Board originally determined that an appropriate bargaining unit should consist of all the production and maintenance employees on a plant-wide basis, and in both, several years after, it was ascertained that the union did not represent a majority of these employees; and years later those who worked in the knitting group were organized and the Board certified them alone as an appropriate bargaining unit. In the Glen Raven case we held that the Board's determination was obviously controlled by the extent of the organization which the union had been able to achieve and we refused to enforce the Board's order; and it is said that is it our duty to do the same in this case. We would agree were it not for important factual distinctions.

When the union, after a lapse of three years, made its second attempt to organize the Glen Raven plant it was its intention to organize all the production workers, and in its literature it appealed to all of them to come in; and it was only after this attempt failed that it confined its efforts to the knitters and won a majority of them. Clearly the union was controlled by the extent of its organization, and when the Board, with full knowledge of the facts, gave its approval, it failed to observe the provisions of the statute, and we felt obliged to dismiss its petition for enforcement. We have no doubt of the correctness of that decision and accordingly reaffirm it. Judicial review of administrative tribunals would be of little value if this Court were obliged to ac-

cept without question administrative pronouncements clearly at variance with established facts.

There are these differences in the pending case. The American Federation of Hosiery Workers, which applied to the Board in 1955 to certify the knitters as a separate bargaining unit, was not the same union which several years before had represented all the production employees and had been decertified in 1953; and it made no effort in 1955 to organize the entire body. The only evidence on this point is the statement of the union's attorney that it would not be interested in an over-all unit. The record lacks the positive evidence, which left no doubt in our minds in the earlier case, that both the union and the Board chose the smaller bargaining unit only because organization of all the production workers had failed. Under these circumstances we are unable to say that the Board has abused its discretion or ignored the statute, and its order will accordingly be enforced.

Enforced.