## NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

## QUAKER CITY LIFE INSURANCE COMPANY, Respondent.

### No. 8771.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1963.

Decided June 3, 1963.

Lee M. Modjeska, Attorney, National Labor Relations Board (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallett-Prevost, Asst. General Counsel, and Warren M. Davison, Attorney, National Labor Relations Board, on brief), for petitioner.

Joseph F. Castiello, Washington, D. C., for respondent.

Isaac N. Groner, Washington, D. C., on brief for amicus curiæ, Insurance Workers International Union, AFL-CIO.

Before HAYNSWORTH, BOREMAN, and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This action is before the Court upon a petition by the National Labor Relations Board pursuant to Sec. 10(e) of the National Labor Relations Act, as amended, (29 U.S.C.A. § 160(e)), for enforcement of its order of August 8, 1962, requiring the respondent employer to cease and desist from violating Sec. 8(a) (1) and (5) of the Act by refusing to bargain upon request with the union involved, and to post appropriate notices. The Board's decision in the underlying representation proceeding is reported at 134 NLRB No. 114, and its decision in the unfair labor practice proceeding is reported at 138 NLRB No. 5.

Since its decision in Metropolitan Life Insurance Company, 56 NLRB 1635 (1944), the Board has consistently followed a policy of refusing to find appropriate for union representation units of debit insurance agents less than statewide in scope. In the representation decision underlying the instant petition for enforcement, the Board announced that it would no longer follow the policy laid down in the Metropolitan case, but that it would now certify units of debit insurance agents narrower than state-wide in scope if the units were otherwise appropriate.

The union involved, the Insurance Workers International Union, AFL-CIO, lost a 1953 state-wide election among the employer's debit insurance agents in Virginia. In 1961 the union attempted to organize Quaker City's debit insurance agents in the Virginia cities of Alexandria, Norfolk, and Richmond. This culminated in the filing of the representation proceeding involved in the instant case, which was, however, limited to the one office in Alexandria. The Board directed an election as to this office, a majority of the employees voted for unionization, and so the Board certified the union as the bargaining agent. The employer refused to bargain with the unit and the Board eventually issued the order herein sought to be enforced.

The employer involved, Quaker City Life Insurance Company, is a multi-million dollar interstate firm, with main offices in Philadelphia, Pennsylvania. Its branch office in Alexandria employs six debit insurance agents, one clerk, and their supervisor, a District Manager. The debit insurance agents sell insurance policies and collect the premiums, each being assigned to a specific geographic area, called a debit. They are admittedly "employees" within the meaning of the Act. Cf. United Insurance Company of America v. N. L. R. B., 304 F.2d 86 (7 Cir. 1962). The agents remit the premiums collected to the Alexandria office, whereupon these amounts are deposited to the credit of the company. The agents spend about 90% of their time in the field, doing much evening work. They return to the office three times a week to remit the receipts and to receive instructions. The agents are paid on a commission basis and have uniform employee benefits such as retirement, vacation and insurance. These agents must be licensed by the State of Virginia, and they receive training as required by that state.

Mrs. Collier, the present office clerk, works fixed hours and is paid on a salary basis. Her fringe benefits are generally similar to those of a debit insurance agent but are smaller in amount. She receives the premium remittances and deposits them, having authority to pay the agents' commissions out of these receipts. She is authorized to withdraw money from the bank account over her own signature. The clerk makes weekly reports to the home office indicating receipts, disbursements, attendance of the agents and sales productions. She checks the details of each new policy before they are submitted. She types correspondence for the District Manager and is privy to all confidential matters and communications between the District Manager and the home office, including those in which the performance of the other employees of the branch office is discussed. Although she is licensed to sell insurance, she never has done so, and the license is probably not a condition of her employment.

The District Manager generally supervises the day to day operations of the office, operating under general rules set by the home office. He recommends the hiring, firing, and disciplining of the office employees and he may, under certain conditions, fire summarily. He trains the local employees, and, within limits set out by the company, makes recommendations as to promotions, increases and allowances.

The unit certified by the Board consists of the debit insurance agents and clerical employees at the Alexandria office. The District Manager was excluded. The employer contends that the unit certified is inappropriate and in violation of the statute since (1) the proper unit would have been larger than one office, perhaps state-wide or nation-wide, (2) the local unit was found appropriate by the Board, in violation of Sec. 9(c) (5) of the Act (29 U.S.C.A. § 159(c) (5)), because its finding was based on the extent of union organization, (3) clerical employees are not appropriate members of a bargaining unit of debit insurance agents, and (4) Mrs. Collier, the present clerk, is a confidential employee and so should have been excluded from the unit.

▐▌ The National Labor Relations Board has been granted the authority to

determine the appropriate unit for collective bargaining, N. L. R. A. Sec. 9(b) (29 U.S.C.A. § 159(b)). It has wide discretionary powers in the area, subject to review only to determine if the discretion has been abused or the statute ignored. Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. Morganton Full Fashioned Hosiery Co., 241 F.2d 913 (4 Cir. 1957). As Sec. 9(b) (29 U.S.C.A. § 159(b)) provides, "The Board shall decide in each case whether * * * the unit appropriate * * * shall be the employer unit, craft unit, plant unit, or subdivision thereof". In many cases there is no "right" unit, and the Board is faced with alternative appropriate units. The Board's choice among these will not be disturbed unless the choice has been made in a manner violative of the statute. N. L. R. B. v. Pittsburgh Plate Glass Co., 270 F.2d 167 (4 Cir. 1959), cert. denied, 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960); N. L. R. B. v. Morganton Full Fashioned Hosiery Co., supra; N. L. R. B. v. Glen Raven Knitting Mills, 235 F.2d 413 (4 Cir. 1956).

■ It appears clear on the facts involved in the instant case that the Board's choice of a single office unit of debit insurance agents should not be disturbed by us. The job specifications of the agents are highly standardized, their working conditions are very similar, and the office operates in an isolated manner, with little or no contact with other branch offices. There is no administrative office operating between the local offices and the main office. The District Manager has at least some control over the operating conditions of each employee. We cannot say that a single office unit is an arbitrary choice as an appropriate unit since substantial evidence on the record as a whole supports the decision of the N. L. R. B. N. L. R. A. Sec. 10(e) (29 U.S.C.A. § 160(e)); Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947).

Nor can we find that the manner in which the Board exercised its choice among the appropriate units violated the statute. Section 9(c) (5) of the Act (29 U.S.C.A. § 159(c) (5)) provides that "[i]n determining whether a unit is appropriate * * * the extent to which the employees have organized shall not be controlling". If this provision were violated, the Board's choice of the unit appropriate for bargaining would have to be set aside. N. L. R. B. v. Glen Raven Knitting Mills, 235 F.2d 413 (4 Cir. 1956).

■ The Board, in its Metropolitan decision, 56 NLRB 1635 (1944), stated that "based upon the extent of organization * * * we have frequently found appropriate for bargaining purposes small groups of employees with a provision for revision of the unit upon a broader organizational showing at a later time". The Board went on to indicate that as it expected debit insurance agents to be organized on a state-wide basis, it would thereafter refuse to certify units less than state-wide in scope. In the instant case, the Board announced that it would no longer follow its Metropolitan rule since the expected state-wide organization had not developed. It further stated that "in the future we shall apply our normal unit principles to the cases as they arise". Finding the single office unit here involved appropriate under normal rules, the Board certified it as the bargaining unit. It can readily be seen that extent of organization was not controlling in violation of the statute. Rather, normal rules were applied to determine whether the unit was appropriate. As we have already indicated, the evidence provides support for the Board's conclusion. The only effect given to the extent of organization was in the policy decision to overrule the Metropolitan case and permit appropriate smaller than state-wide units. Furthermore, in explaining the purpose of Sec. 9(c) (5) of the Act, Senator Taft stated that extent of organization shall not be relied upon to permit certification "where all valid tests fail to give the union what

it desires. * * *" 93 Cong.Rec. 6860; Vol. II, Leg.Hist. of the Labor Management Relations Act, 1947 (G.P.O. 1948) P. 1625. In light of this, and under the terms of statute, the construction of the section involved has generally been to permit extent of organization to be a factor, as long as other valid tests indicate that the unit is an appropriate one. Foreman & Clark, Inc. v. N. L. R. B., 215 F.2d 396 (9 Cir. 1954), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954); Westinghouse Electric Corp. (Elevator Division) v. N. L. R. B., 236 F.2d 939 (3 Cir. 1956); N. L. R. B. v. Smythe, 212 F.2d 664 (5 Cir. 1954); Union Carbide & Carbon Corp. v. N. L. R. B., 244 F.2d 672 (6 Cir. 1957); Cf. N. L. R. B. v. Morganton Full Fashioned Hosiery Co., 241 F.2d 913 (4 Cir. 1957). At most, the extent of organization was only one of the factors leading to the Board's decision, not the controlling one. On these grounds, the instant case is distinguishable from N. L. R. B. v. Glen Raven Knitting Mills, 235 F.2d 413 (4 Cir. 1956). In Glen Raven the extent of organization was found to have been the only factor relied on by the Board in deciding upon the appropriate unit.

Because of common interests, common working conditions, common supervision and common isolation from other offices, we find the Board's inclusion of clerical employees in a unit with the agents is appropriate. We are of the opinion, however, that the Board exceeded the bounds of proper discretion by including Mrs. Collier in the otherwise appropriate unit. The undisputed evidence indicates that this employee is privy to confidential communications concerning labor relations between the insurance agents and the employer. She is intimately aware of all communications between the District Manager and the home office concerning recommended wage and expense allowance adjustments, personal attitudes of the agents, the agents' performance, and remedial action connected therewith, and recommendations on employment termination.

It would be patently unfair to require the company to bargain with a union that contains such an employee. As the Board has put it, "management should not be required to handle labor relations matters through employees who are represented by the union with which the company is required to deal and who in the normal performance of their duties may obtain advance information of the company's position with regard to contract negotiations, the disposition of grievances, or other labor relations matters". The Hoover Company, 55 NLRB 1321, 1323 (1944); Cf. The B. F. Goodrich Co., 115 NLRB 722.

The requisite notices to be posted should be modified to conform to this opinion.

Enforcement granted in part and denied in part.

BOREMAN, Circuit Judge (dissenting in part and concurring in part).

The insurance company here involved is a wealthy and widespread enterprise conducting substantial operations in sixteen states with its headquarters in Philadelphia. In the State of Virginia it maintains district offices at Alexandria, Lynchburg, Martinsville, Norfolk, Richmond and Roanoke, six in all. The management of its operations is centralized at its Philadelphia home office from where all of its business and labor relations policies are controlled. All final authority on operating and personnel matters such as hiring, firing, wage increases and promotions are thus under a common centralized control.

Each state in which the company does business imposes certain supervision over and regulation of the operations of the company within the particular state, thus substantially affecting the state-wide operations of the company. In Virginia the applicable regulations provide that no contracts of insurance may be offered without state approval; that no agent may be licensed to operate in the state unless trained in accordance with a training manual approved by the state to

insure the fulfillment of the state's own standards; and that the company must report all sales in the state, pay a premium tax on such sales and file with the state detailed annual statements respecting its operations in the state. While the requirements of the various states in these respects are varied each state imposes regulations which are uniform therein. Since regulation is on a state-by-state basis, the company's operations are necessarily conducted, at least in substantial part, on that basis. Consequently, all of the insurance agents of the company operating from its six district offices in Virginia are similarly trained and controlled, have exactly the same duties, sell, service and are familiar with the same state-approved insurance contracts; they have uniform working conditions, pay scales and fringe benefits. There is, in fact, no distinct difference between the operations of the agents in the various district offices throughout the state.

The background of this proceeding shows that in 1953 the same union here involved conducted a state-wide organization campaign among all of the company's agents in Virginia, but upon an election on this basis the union was rejected. Thereafter, in 1961, the *same union* attempted to organize the company's agents in the three district offices located at Alexandria, Norfolk and Richmond. Apparently having been unsuccessful except among the agents in the Alexandria office, the union sought certification as the representative of the Alexandria group only, and subsequently the Board ordered an election restricted to the unit comprising the agents in the Alexandria office alone, which election the union won.

On these facts I am of the opinion that the instant case is controlled by our prior decision in National Labor Relations Board v. Glen Raven Knitting Mills, 235 F.2d 413 (4th Cir. 1956). The majority opinion in the instant case states that in Glen Raven the extent of organization was found to have been the *only* factor relied on by the Board in deciding

upon the appropriate unit. There were, however, other factors before the Board for consideration; extent of organization was found by this court to have been the *controlling* factor. In this court's subsequent decision in National Labor Relations Board v. Morganton Full Fashioned Hosiery Co., 241 F.2d 913 (4th Cir. 1957), the facts respecting the common interests and working conditions of the employees in the unit involved, the knitters' group, were identical with those in the Glen Raven case. Had there not been such a clear indication in Glen Raven that extent of union organization was a paramount consideration of the Board in determining the appropriate unit, it is more than probable that this court would have reached the same conclusion as it did in Morganton. The late Judge Soper wrote the opinions in Glen Raven and Morganton. The *real import* and significance of the Glen Raven decision is actually more clearly explained by Judge Soper in the opinion in Morganton than it was by his language in the Glen Raven decision itself. In Morganton, 241 F.2d at p. 915, the court, in explaining the rationale of Glen Raven which distinguishes that decision, said:

"When the union, after a lapse of three years, made its second attempt to organize the Glen Raven plant it was its intention to organize all the production workers, and in its literature it appealed to all of them to come in; and it was only after this attempt failed that it confined its efforts to the knitters and won a majority of them. Clearly the union was controlled by the extent of its organization, and when the Board, with full knowledge of the facts, gave its approval, it failed to observe the provisions of the statute, and we felt obliged to dismiss its petition for enforcement. We have no doubt of the correctness of that decision and accordingly reaffirm it. Judicial review of administrative tribunals would be of little value if this Court were obliged to accept without question administrative pronounce-

ments clearly at variance with established facts.

"There are these differences in the pending case. The American Federation of Hosiery Workers, which applied to the Board in 1955 to certify the knitters as a separate bargaining unit, was not the same union which several years before had represented all the production employees and had been decertified in 1953; and it made no effort in 1955 to organize the entire body. The only evidence on this point is the statement of the union's attorney that it would not be interested in an over-all unit. * * * "

Here the evidence clearly shows that a state-wide or multi-office bargaining unit would have all of the positive indicia of an appropriate bargaining unit as set forth in National Labor Relations Board v. Williams, 195 F.2d 669 (4th Cir. 1952). In fact, the state-wide unit would seem to be far *more* appropriate. As the court said in the Glen Raven decision, 235 F.2d at p. 415:

"* * * Unity of interest, common control, dependent operation, sameness in character of work and unity of labor relations have led the Board and the courts in many cases to approve the inclusion in a bargaining unit as many employees as possible who have a common interest. * * * "

Although the Board is empowered to make its own *policy* decisions, it seems that the abuses (which the statute prohibiting the consideration of extent of organization as a controlling factor was designed to curb) were substantially the same abuses which the Board meant to eliminate by its decision in Metropolitan Life Insurance Co., 56 NLRB 1635 (1944). There the Board stated, "*based upon the extent of organization* among employees of an employer we have frequently found appropriate for bargaining purposes small groups of employees with a provision for revision of the unit upon a broader organizational showing at a later time." (Emphasis supplied.)

The Board in the Metropolitan decision thereupon established a new policy of avoiding the extent of organization as the controlling factor in units of debit insurance agents, a policy consistent with and compelled by the statute referred to above, enacted in 1945. Indeed, in its decision in the instant case, the Board, in stating the rationale of its determination to reverse the policy decision in Metropolitan, clearly indicates that its. newly adopted policy is, in reality, based upon the extent of organization factor when it now says that the "language of the Metropolitan Life case indicates that the rule was adopted *solely* in anticipation of broader organization on a company or state-wide basis, which at that time appeared imminent," but that "as a practical matter, however, such state or company-wide organization has not. materialized." The Board then concludes. that since the underlying reason for the adoption of the rule of the Metropolitan case had failed, the rule itself must also fail. The instant case reeks with consideration of extent of organization. It. is quite clear that the reason for the Board's decision to change the policy of Metropolitan is that it is easier to organize small local district offices one at. a time and thus eventually spread to a state-wide or company-wide organization than it is to organize the state-wide or company-wide group as a single unit. This appears to me to be nothing less. than a return to the heretofore unacceptable and outlawed practice of establishing provisional units which were admittedly based on the extent of organization and a circumvention of the express prohibition of the statute under the guise of a policy change. To require the Company to bargain separately with a. representative of the employees in each district office, as organization of each small unit may succeed, can result in nothing but confusion and turmoil.

Therefore, I respectfully dissent from that portion of the majority decision which approves the Board's order, but I concur in the holding that Mrs. Collier should be excluded from the unit.