**WESTINGHOUSE ELECTRIC CORPO-
RATION, Petitioner,**

v.

**The NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 17811.**

United States Court of Appeals
Sixth Circuit.

July 16, 1968.

John G. Wayman, Pittsburgh, Pa.
(John G. Wayman, Scott F. Zimmerman,
Reed, Smith, Shaw & McClay, Pitts-
burgh, Pa., on the brief), for petitioner.

John I. Taylor, N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., John I. Taylor, Jr., Attys., N.L.R.B. Washington, D. C., on the brief), for respondent.

Before WEICK, Chief Judge, and PECK and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Westinghouse Electric Corporation (herein the "Company") has petitioned this court for review, and the National Labor Relations Board has cross-petitioned for enforcement of the Board's order of March 20, 1967 (163 NLRB No. 62), finding the Company guilty of violating Section 8(a) (5) and (1) of the National Labor Relations Act, as amended (29 U.S.C. § 158(a) (5) and (1)) by refusing to bargain with the Union* as to three of the Company's secretarial employees. It is the Company's position that the three secretaries are "confidential employees" as that term is used by the Board, and that the Board erred in not excluding them from the appropriate bargaining unit.

In August, 1964, the Company reorganized its Aerospace Division located in Lima, Ohio, creating three new product departments, the Aerospace Power Systems Department, the Utilization Systems Department and the Systems Research and Development Department. The Company thereafter notified the Union that it considered the secretaries to the managers of these three new departments to be confidential employees, and had removed their names from the Union dues payroll deduction list. The Union filed a petition for unit clarification in September, 1965, for which a hearing was conducted. The Hearing Officer's decision that the secretaries were not excludable from the bargaining unit as confidential employees under prior Board rulings was affirmed by the Regional Director. When the Company then refused to bargain with the Union with regard to the terms and conditions of employment of the three secretaries as requested, the unfair labor practice charges underlying the order of the Board now on review were filed.

■■ The Board has long held that employees who "assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations" are deemed confidential employees and may be excluded from a bargaining unit. Ford Motor Co., 66 NLRB 1317, 1322 (1946); The B. F. Goodrich Co., 115 NLRB 722, 724 (1956); Vulcanized Rubber and Plastics Co., Inc., 129 NLRB 1256 (1961). The broad rationale behind this rule is that employees should not be placed in a position involving a potential conflict of interests. Retail Clerks International Ass'n v. N. L.R.B., 125 U.S.App.D.C. 63, 366 F.2d 642, 645 n. 7 (1966), cert. denied, 386 U.S. 1017, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967). As the Board has stated:

"Management should not be required to handle labor relations matters through employees who are represented by the union with which the company is required to deal and who in the normal performance of their duties may obtain advance information of the company's position with regard to contract negotiations, the disposition of grievances, or other labor relations matters." The Hoover Company, 55 NLRB 1321, 1323 (1944).

See also N.L.R.B. v. Quaker City Life Ins. Co., 319 F.2d 690, 694 (4th Cir. 1963). The Board strictly adheres to its definition of a "confidential employee" since a broader rule would, in the Board's opinion, needlessly deprive many employees of their right under Section 7 of the Act to bargain collectively through representatives of their choosing. See Ford Motor Co., supra; The B. F. Goodrich Co., supra. The Board thus at-

---

* Lima Westinghouse Salaried Employees Association, affiliated with Federation of Westinghouse Independent Salaried Unions.

tempts to strike a balance between the right of employees to be represented in the collective bargaining process with the right of the employer to formulate, determine and effectuate its labor policies with the assistance of employees not represented by the union with which it deals.

 In accordance with the above principles, the Board has ruled that an employee may not be excluded from the appropriate bargaining unit merely because he has access to confidential information concerning the employers internal business operations and which is not related to the field of labor relations. Swift & Co., 129 NLRB 1391 (1961); Dohrmann Commercial Co., 127 NLRB 205 (1960); Cf. N.L.R.B. v. Poultrymen's Service Corp., 138 F.2d 204, 210–211 (3rd Cir. 1943). It has also been established Board policy not to exclude secretaries to management personnel who participate in labor matters only to the extent of furnishing factual data representing their immediate responsibilities. Vulcanized Rubber and Plastics Co., supra; Eastern Corp., 116 NLRB 329 (1956). The Board has further held that department or division managers who handle labor relations matters to the extent that their own area of managerial responsibilities are affected, rather than on a plant-wide or company-wide basis, do not fall within its rule concerning confidential employees. Ethyl Corporation, 118 NLRB 1369 (1957); Standard Brands, Inc., 101 NLRB 1349 (1952); Minneapolis-Moline Co., 85 NLRB 597 (1949). This latter ruling by the Board does not rest upon the application of a mechanical test, but has reflected the fact that the duties of the department managers in suit in dealing with the respective unions were not substantial enough to warrant the exclusion of their secretaries from a bargaining unit.

In the instant case the Board found that the personal secretaries to the three new department managers worked for the managers in a confidential capacity. The sole issue presented, therefore, is whether the department managers "formulated, determined and effectuated management policies in the field of labor relations."

The Company has industrial relations personnel at its headquarters in Pittsburgh, Pennsylvania, as well as an Industrial Relations Department at the Aerospace Division at Lima. Negotiations between the Company and the Union are conducted on a national basis. The national contract, however, is supplemented by local agreements between local union affiliates and the various plants or divisions. The record shows that the manager of the Power Systems Department, Mr. Chiazza, whose testimony it was stipulated would reflect that of the other two managers had they been called to testify, maintained confidential files in his office covering his numerous duties as department manager, to all of which his secretary had access. However, the record made in the unit clarification proceedings established that Mr. Chiazza's participation in processing grievances in his department was not substantial, and that he participated in negotiations with the Union concerning the local supplement only to the extent of making recommendations on various proposals to the Industrial Relations Department. Mr. Chiazza testified that he devoted "maybe ten percent of my time and at other times a smaller percentage" to industrial relations or personnel functions.

At the hearing on the unfair labor practice charges, the Company sought to establish that the duties and responsibilities of the three managers under consideration in connection with the impending national negotiations would warrant the exclusion of their secretaries as confidential employees. It was shown that each of the three managers, along with five other Company officials, had been appointed to the Company's Employee Relations Committee at the Aerospace Division. Company representatives from national headquarters were present at the committee meetings, the general objectives of which were, as stated by the

Company in its brief, "to enable the national negotiators to be aware of the situation which the division management faced and to make the division management aware of the situation faced by the national negotiators and in this way to enable both management groups to anticipate what the Union demands would be and what demands should be made by the Company." The record also shows that similar discussion type meetings were conducted by Company representatives at about twelve other plant locations.

From the latter part of April or early May, 1966, until June 21, 1966, the Employee Relations Committee met on only three occasions, including an initial organizational meeting at which the committee's role was discussed and subcommittees identified. No meeting was held from June 21 until the hearing before the Trial Examiner on August 9, 1966, at which time national negotiations were scheduled to commence in six days. In addition to this evidence of negligible committee activity such a short time prior to the beginning of national negotiations, there was little evidence to show any specific responsibilities of the managers in question as members of said committee. In this regard, the Board emphasizes that none of the three managers were called to testify at the August 9 hearing.

 Considering the record as a whole, we find that the Board could reasonably have concluded that those charged with formulating and effectuating the Company's bargaining position relied upon the Employee Relations Committee for a realistic appraisal of the situation confronting local management under the prior unexpired contract. While the three managers unquestionably dealt with labor relations problems to some extent, it cannot be said, in light of the broad discretion vested in the Board for determining the appropriate bargaining unit (See Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N.L.R.B. v. Royal Oak Tool and Machine Co., 320 F.2d 77 (6th Cir. 1963); N.L.R. B. v. Mock Road Super Duper, Inc., 393 F.2d 432 (6th Cir. 1968)), that the Board acted in an arbitrary or capricious manner in not excluding the personal secretaries to the department managers from the bargaining unit on the ground that the managers did not "determine, formulate and effectuate" management's labor policies. Nor can it be said that the Board abused its discretion in denying the Company's motion to remand the case for the taking of additional evidence. Accordingly, the order of the Board requiring the Company to bargain with the Union as to the secretaries in suit upon request should be enforced.

Enforcement granted.