## NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

## RISH EQUIPMENT COMPANY, a Subsidiary of Bluefield Supply Company, Inc., Respondent.

### No. 82–1022.

United States Court of Appeals, Fourth Circuit.

Argued July 22, 1982.

Decided Sept. 2, 1982.

Rehearing and Rehearing En Banc Denied Oct. 19, 1982.

Richard Michael Fischl, Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief), for petitioner.

George J. Gardner, Roanoke, Va. (Douglas D. Wilson, David O. Williamson, Gardner, Cranwell & Rocovich, P. C., Roanoke, Va., on brief), for respondent.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The Board seeks enforcement of its order finding that the employer's refusal to bargain with the certified representative of a unit of clerical employees violated Section 8(a)(5) and (1) of the Act. The employer justified its refusal to bargain on the inclusion in the certified unit of Charlotte Bowers, who, it contends, qualified as a confidential employee under *N.L.R.B. v. Quaker City Life Insurance Company*, 319 F.2d 690 (4th Cir. 1963). We agree that *Quaker City* is controlling.

In *Quaker City* we held that the secretary of the district manager of a nationwide insurance company was a "confidential employee," and that "[i]t would be patently unfair to require the company to bargain with a union that contain[ed] such an employee." *Id.*, 694. The relevant facts in this case are the same as those in *Quaker City*. Just as the secretary in *Quaker City*, Charlotte Bowers is the secretary to the branch general manager of a regional concern.

The Board's attempts to distinguish *Quaker City* are unpersuasive. It first argues that Bowers' superior took no active role in establishing labor relations policy, but merely implemented policy formulated by the home office. But the duties of Gardner, the branch manager in this case, are not different than those performed by the district manager in *Quaker City*. There, the district manager "supervis[ed] the day to day operations of the [branch] office, operating under general rules set by the home office [,] ... [and] recommend[ed] the hiring, firing, and disciplining of the office employees and ... under certain conditions, fire[d] summarily" 319 F.2d 692. The Board concedes that Gardner has similar authority. Beyond this, there is undisputed testimony that in this case Gardner is "in the thick" of all labor contract matters, including both negotiations generally and negotiations involving grievances arising at his branch, evidence which was not present in *Quaker City*.

The Board next asserts that, even if Gardner's participation in labor matters was sufficient, Bowers was not exposed to any confidential labor relations information. In *Quaker City*, the secretary "typ[ed] correspondence for the District Manager and [was] privy to all confidential matters and communications between the District Manager and the home office, including those in which the performance of the other employees of the branch office is discussed." *Id.*, 692. Although Bowers does not see all incoming confidential mail, there is no restriction on her access to all records in the office, she does all the filing and she does type all outgoing correspondence with the home office, which necessarily would include any written communications on labor relations, such as employee complaints or grievances, employee evaluations or performances, etc., and she, finally was, as Gardner summarized it, his "personal, confidential secretary ...." This is substantially like the situation of the confidential secretary in *Quaker City*.

The Board finally argues that the Supreme Court in *N.L.R.B. v. Hendricks Cty. Rural Electric Corp.*, 454 U.S. 170, 102 S.Ct. 216, 70 L.Ed.2d 323 (1981), has effectively overruled *Quaker City*. We disagree. The Court in *Hendricks* merely approved the Board's "labor nexus" rule as determinative of whether or not a personal secretary is a "confidential employee." Under this rule, "the term 'confidential' ... embrace[s] only those employees who assist and act in a confidential capacity to persons who exercise 'managerial' functions in the field of labor relations." 454 U.S. at 177–178, 102 S.Ct. at 222, 70 L.Ed.2d at 331, *quoting Ford Motor Co.*, 66 NLRB 1317, 1322. This Court followed precisely this standard in deciding *Quaker City*.

Nor does the Court's application of the rule in *Hendricks* differ from that in *Quaker City*. In finding that the secretary there was not a confidential employee, the Court made clear the unusual character of her duties, a fact which was actually determinative of the decision in that case. Thus, the majority opinion declares that "*Hendricks* does not argue that Weatherman came within the labor-nexus test as formulated

by the Board [but concedes that she does not have] 'confidential duties "with respect to labor policies." ' " *Id.* 454 U.S. at 188–192, 102 S.Ct. at 228–29, 70 L.Ed. at 338–39. In explanation of this singular statement, the Supreme Court adds in a note:

"Hendricks is an unusual case, inasmuch as Weatherman's tasks were 'deliberately restricted so as to preclude her from' gaining access to confidential information concerning labor relations. 236 NLRB 1616, 1619 (1978). Whether Hendricks imposed such constraints on Weatherman out of specific distrust or merely a sense of caution, it is unlikely that Weatherman's position mirrored that of executive secretaries in general." *Id.*, n. 23.

The duties of the confidential secretary in *Quaker City* and of Bowers in this case were not circumscribed as were the responsibilities of the secretary in *Hendricks.* The ruling in *Hendricks* is accordingly not in point here.

In summary, we conclude that, under our rule as established in *Quaker City,* the Board should not have included Charlotte Bowers in the certified bargaining unit. As her vote would not have affected the outcome of the certification election, the employer remains obligated to bargain with the certified representative concerning the terms and conditions of all employees properly included in the unit on the basis of the result of the certification election. But since Bowers is not properly included within the unit, the employer is not obligated to bargain with the Union concerning her terms and conditions of employment. The petition of the Board to enforce its order requiring the employer to bargain with the Union is granted except insofar as it requires the employer to bargain concerning employee Bowers.

Enforcement granted in part and denied in part.

K. K. HALL, Circuit Judge, dissenting:

Ostensibly applying the labor nexus test, the majority concludes that William Gardner formulates, determines and effectuates labor relations policy for the Rish Equipment Company, and that Gardner's personal secretary, Charlotte Bowers, is therefore a confidential employee. Though Gardner clearly effectuates labor policy, I do not believe that he either formulates or determines that policy. Accordingly, I dissent.

The labor nexus test defines "confidential employees" as those "who assist and act in a confidential capacity to persons who formulate, determine and effectuate management policy in the field of labor relations." *N.L.R.B. v. Hendricks Cty. Rural Electric Corp.,* 454 U.S. 170, 102 S.Ct. 216, 228, 70 L.Ed.2d 323 (1981) *quoting B. F. Goodrich Co.,* 115 N.L.R.B. 722, 724 (1956). By requiring that the person formulate and determine as well as effectuate labor policies, the test contemplates that the person do more than merely execute existing policies. Instead, he must also play a role in developing and selecting the company's policies.

*Goodrich* illustrates the distinction between those who only effectuate policy and those who also formulate and determine. *Goodrich* dealt in part with the confidential status of the secretaries for certain management personnel. The plant engineer and the managers of the industrial engineering, purchasing, production and technical divisions were responsible for hiring, discharging, disciplining and promoting their respective employees, granting merit raises and handling grievances matters. The personnel and office managers played a role in the grievance procedure, but, significantly, they also participated in the negotiation of collective bargaining contracts. Utilizing the labor nexus test, the Board found that only those secretaries for the personnel and office managers qualified as confidential employees.

The *Goodrich* analysis is dispositive of this case. Gardner testified that he is the general manager of Rish's St. Albans branch. In that capacity, he performs discharge, discipline and timekeeping functions and makes recommendations for pay raises. He testified in a conclusory fashion that he participated in labor policy decisions, but he was unable to give a single example of his participation. He conceded

that these decisions were made "principally" at the home office in Bluefield, West Virginia. In short, Gardner's duties are squarely analogous to those of the plant engineer and division managers in *Goodrich.* Consequently, *Goodrich* compels the conclusion that Gardner's secretary is not a confidential employee.

The majority's heavy reliance upon *N.L. R.B. v. Quaker City Life Ins. Co.*, 319 F.2d 690 (4th Cir. 1963) is misplaced. As revealed by the list of the duties performed by the Quaker City district manager, cited by the majority at page three of its opinion, that manager simply played no role in the formulation and determination of labor policy. Though citing *Goodrich, Quaker City* neither discusses or applies the criteria of the labor nexus test. Since *Hendricks* mandates the application of those criteria, *Quaker City* completely lacks precedential value.

In the context of this case, *Hendricks* overrules *Quaker City.* By adhering to *Quaker City,* the majority inexplicably refuses to bring this Circuit into step with the current state of the law. For these reasons, I would enforce the Board's order to bargain.