**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 86–1199.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1987.

Decided Nov. 12, 1987.

Daniel M. Gribbon (Jerome Ackerman, Douglas S. Abel, Covington & Burling, Washington, D.C., James J. Burns, William A. Young, Jr., Wallerstein, Goode & Dobbins, Richmond, Va., on brief), for petitioner.

Karen Ruth Cordry, N.L.R.B. (Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, Peter Winkler, Supervisory Atty., Washington, D.C., on brief), for respondent.

Before WIDENER and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WIDENER, Circuit Judge:

This is a petition of Prudential Insurance Company of America to review an order of the National Labor Relations Board and the Board's cross petition for enforcement. Prudential challenges a representation election based on the propriety of a bargaining unit which included an alleged confidential employee. We hold that the employee was not properly included in the bargaining unit and remand the case with instructions.

The United Food & Commercial Workers International Union, AFL–CIO–CLC, filed a petition with the Board seeking to represent a unit of office and clerical employees at Prudential's Cape Cod district office located in Hyannis, Massachusetts. These employees, referred to by Prudential as the field service staff, support the Company's sales agents in their selling and service functions. There are several job categories that are involved in these functions: service representative, senior service representative, service assistants, service coordinator, senior service coordinator, and assistant to the district manager. These positions comprise the bargaining unit sought by the Union and approved by the Board. The Company's challenge is directed to the inclusion within the unit of the assistant to the district manager, Patricia Roberts.

In May 1985, the Board conducted a pre-election hearing. The Company contended that the inclusion of Mrs. Roberts was improper because she was a confidential employee. After hearings, the Board's Regional Director issued a Decision and Direction of Election in which he concluded that Mrs. Roberts was not a confidential employee. The Regional Director's conclusion was based on two alternative findings. First, he found that the district manager does not formulate, determine and effectuate labor relations policies. Second, the Regional Director also found that Mrs. Roberts did not assist and act in a confidential capacity to the district manager. The Company subsequently filed a request for review with the Board, challenging the Regional Director's unit determinations. The Board denied this request based on the Regional Director's finding that the district

manager does not formulate, determine, and effectuate management labor relations policy. Given this determination, the Board did not comment on the Regional Director's alternate finding.

On August 28, 1985, the Board's regional office conducted a secret ballot election. The Company unsuccessfully challenged the ballot of Mrs. Roberts. The Board agent rejected Prudential's challenge and refused to impound and segregate her ballot since the Board had already ruled on her eligibility. However, the agent permitted the Union's challenge to two votes. Those two ballots were sealed and not counted in the election count. The tally, including the ballot of the assistant to the district manager, was 4–1 in favor of the Union. Prudential objected to both the conduct of the election and the conduct affecting the results of the election, but these objections were rejected by the Regional Director, who certified the Union as the bargaining unit's representative. The Company then requested Board review of the Regional Director's certification of the Union as representative. However, this request for review was denied by the Board on October 29, 1985 as raising "no substantial issues warranting review."

In order to gain judicial review of the Board's certification of the representative, Prudential refused to bargain with the Union. As stated, this case comes to us upon a petition to review the Board's order requiring Prudential to bargain with the Union and its determination that the Company violated §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), by refusing to do so.

In order to evaluate Prudential's claim that the assistant to the district manager should have been excluded from the field service bargaining unit as a confidential employee, it is necessary for us to examine the relationship between her and the district manager as well as the district manager's responsibilities. With little exception, the facts in this case are not in dispute and the Board's findings are essentially a summary of undisputed evidence. Accordingly, it is appropriate to reproduce the Board's

findings concerning the district manager and the assistant to the district manager.

As district manager, Leary oversees the day-to-day operation of the Cape Cod district office. He is responsible for hiring and training new employees, setting their levels of compensation, determining work assignments, scheduling overtime, scheduling vacations, evaluating employees, making disciplinary recommendations, recommending promotions, merit increases and bonuses and resolving day-to-day problems that arise in the office. The collective bargaining agreement between the Employer and the Petitioner covering district agents provides that the district manager is the Employer's representative at Step One of the contractual grievance procedure. While Leary has the authority to respond to grievances at Step One, since he has been at the Cape Cod District office (a year and a half) his practice has been to receive and investigate each grievance, formulate a recommended response and then clear it with VPRM Russo before presenting it to the Petitioner. Leary does not participate either in the preparation for, or the actual negotiations with the Petitioner concerning the district agents' unit. The Employer's labor relations and personnel policies, including compensation plans and levels, and benefits, are established and/or negotiated and managed from the Employer's corporate headquarters in Newark, New Jersey and/or its regional offices, in this case located in Boston, Massachusetts. As district manager, Leary is responsible for ensuring that the Employer's policies are administered in the Cape Cod District office consistently with the Employer's national policy.

Patricia Roberts is the ATTM in the Cape Cod District office. In this capacity, she handles correspondence and clerical work for Leary. Thus, she performs customary secretarial duties, such as typing and filing; she does not take dictation. Roberts maintains files of grievances submitted by the Petitioner and types Leary's proposed and actual responses to them. Roberts types Leary's

correspondence with Russo and other Employer representatives and maintains a file of such correspondence in her desk, which is unlocked. Roberts also compiles and types office sales reports and submits them to the appropriate regional office. Roberts types correspondence concerning the employment, compensation, evaluation and discipline of district agents. Roberts has access, as needed, to employees' personal job history files, which are maintained in a locked portion of Leary's desk. She also shares a private telephone line with Leary, but she has never been asked by him to listen in on a conversation. In one instance, at Leary's request, Roberts compiled mileage figures as part of a grievance response. However, she was asked to perform this task after the Employer had given its grievance answer to the Petitioner. In another instance, she looked up a date in an unspecified file.

Section 2(3) of the NLRA provides that the "term 'employee' shall include any employee...." 29 U.S.C. § 152(3). But, notwithstanding that under a literal reading of this language Mrs. Roberts would be an employee, both the Board and the courts exclude certain confidential employees from collective bargaining units. See *NLRB v. Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 177, 102 S.Ct. 216, 222, 70 L.Ed.2d 323 (1981). In *Hendricks,* the Supreme Court approved the Board's "labor-nexus" rule as determinative of whether or not a worker is to be deemed a confidential employee. Under this labor-nexus rule, "the term 'confidential' ... embrace[s] only those employees who assist and act in a confidential capacity to persons who exercise 'managerial' functions in the field of labor relations." *Hendricks,* 454 U.S. at 180–81, 102 S.Ct. at 224. This concise statement of law presents the two questions involved in this case. First, whether the district manager was a person who exercised managerial functions in the field of labor relations. And, second, whether the Regional Director erred in finding that the assistant to the district manager did not assist or act in a confidential capacity to the district manager.

In *NLRB v. Quaker City Life Insurance Co.,* 319 F.2d 690 (4th Cir.1963), we held that the secretary of the district manager of a national insurance company was a confidential employee and that "[i]t would be patently unfair to require the company to bargain with a union that contain[ed] such an employee." 319 F.2d at 694. The facts of this case are indistinguishable from those of the *Quaker City* case. In *Quaker City,* we noted that the district manager in that case "generally supervises the day to day operations of the office, operating under general rules set by the home office. He recommends the hiring, firing, and disciplining of the office employees and he may, under certain conditions, fire summarily. He trains the local employees, and, within limits set out by the company, makes recommendations as to promotions, increases and allowances." 319 F.2d at 692. This description of Quaker City's district manager's duties takes in only a part of those of Prudential's district manager here. Additionally, for example, Prudential's district manager is the employer's representative at Step One of the grievance procedure. He may respond to Step One or formulate and recommend a response for his superior. He is also responsible for ensuring that Prudential's national labor and personnel policies are carried out in the district office. Accordingly, we conclude that the district manager here exercises managerial functions in the field of labor relations. The Board has invited us to reject *Quaker City* as lacking in precedential value in light of the Supreme Court's ruling in *Hendricks.* However, this argument is foreclosed by our decision in *NLRB v. Rish Equipment Co.,* 687 F.2d 36 (4th Cir.1982). In *Rish,* on facts similar to those here, we rejected the argument that our decision in *Quaker City* was displaced by *Hendricks.* 687 F.2d at 37. We follow our earlier determination, and *Quaker City* and *Rish* are yet controlling precedent in this circuit. Accordingly, we conclude that the Board erroneously decided to deny review of the Regional Director's decision on the ground that the

district manager did not exercise sufficient managerial functions in the field of labor relations.

█ This conclusion, however, does not end our review. We must also examine the Regional Director's alternate finding that Mrs. Roberts, the assistant to the district manager, did not assist or act in a confidential manner in her relations with the district manager.

We think that the Regional Director's finding is not supported by substantial evidence in light of the entire record. See *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Regional Director's own findings concerning Mrs. Roberts, already reproduced, supra, demonstrate that her position's confidential characteristics exceed those of the Quaker City employee "who makes weekly reports to the home office indicating receipts, disbursements, attendance of the agents and sales productions. She checks the details of each new policy before they are submitted. She types correspondence for the District Manager and is privy to all confidential matters and communications between the District Manager and the home office, including those in which the performance of the other employees of the branch office is discussed. Although she is licensed to sell insurance, she never has done so, and the license is probably not a condition of her employment." *Quaker City*, 319 F.2d at 692. Moreover, there was undisputed documentary evidence that Prudential's job description questionnaire for the position of assistant to the district manager describes the job as "confidential" by its very nature. The confidential character of the position of assistant to the district manager is further elaborated on in Prudential's personnel policy handbook. Significantly, both the district manager and Mrs. Roberts testified that the Company had told her that her job was confidential. Finally, the Board has cited us to no convincing reason to sustain the Regional Director's finding in light of our decisions in *Quaker City* and *Rish*. We thus find that the Regional Director's finding that Mrs. Roberts did not assist or act in a confiden-

tial manner to the district manager is not supported by substantial evidence. Having concluded that Mrs. Roberts does serve in a confidential capacity to a manager who exercises sufficient managerial function in the field of labor relations, we are of the opinion that she should not be included within the bargaining unit in question.

We must now decide what action should be taken on remand. We reject the Company's position that a new election must be held merely because the employees' vote may have been different had they known that the assistant to the district manager was not a member of the bargaining unit. The case cited by the Company for that proposition, *Hamilton Test Systems, N.Y., Inc. v. NLRB*, 743 F.2d 136 (2d Cir.1984), does not support that result. *In Hamilton Test Systems*, the voting employees were misinformed by the Board and believed that they were voting for representation in a broad facility-wide unit. However, the Board later considered "the ballot as a vote for representation in a unit that [was] less than half [that] size and considerably different in character." 743 F.2d at 140. Thus, that case should be distinguished on its facts from ours because we deal here with a unit that has been altered by only one member.

█ While we conclude that the Company is not necessarily entitled to a new election, we recognize that upon remand it will be necessary for the Board to consider the two votes challenged by the Union and not included in the tally. Given the fact that it is impossible to determine which way Mrs. Roberts' improper vote was cast, we have no way of knowing whether a correct tally would favor the Union by a 3–1 or 4–0 margin. Accordingly, it is quite possible that the two challenged employee votes, if they survive the Union's challenge and if they were cast against union representation, would affect the Union's majority status. In that case, it would in fact be necessary to hold a new election in a properly constituted unit. Otherwise, the representation election result must stand.

Accordingly, we reverse the Board's finding that Mrs. Roberts was not a confiden-

tial employee and remand this case for proceedings consistent with this opinion.

The petition for review of Prudential is granted in part and remanded in part.

The cross petition of the Board for enforcement is denied at this time but may be reinstated depending on the result of the proceedings on remand.