**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**Norman J. FOUCHA et al., Defendants.**
Civ. A. No. 72–1060–S.

United States District Court,
N. D. Alabama, S. D.
March 16, 1973.

22

Wayman G. Sherrer, U. S. Atty., Sara D. Hamilton, Asst. U. S. Atty., Birmingham, Ala., Gregory B. Novendon, Atty., Dept. of Justice, Ronald M. Dietric, Gen. Counsel, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Nicholas S. Reynolds, Atty., F. T. C., Washington, D. C., for plaintiff.

Gary P. Smith, Birmingham, Ala., Joseph J. Lyman, Washington, D. C., for defendants.

## MEMORANDUM OF OPINION AND ORDER

POINTER, District Judge.

This case raises the question of who, by what procedure, can give the "approval of the Attorney General" to the issuance of an order directing a witness in an administrative hearing to give evidence that, but for 18 U.S.C.A. § 6001 et seq., would be protected by the Fifth Amendment.

This action was brought by the FTC under 15 U.S.C.A. § 49 for an order compelling four recalcitrant witnesses to obey an order issued under 18 U.S.C.A. § 6004. In the initial sparring, the Commission took the position that this proceeding was but a summary procedure, dispensing with the Federal Rules of Civil Procedure. The court, however, ruled that it was to be an adversary proceeding, United States v. Powell, 379 U. S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112

(1964), and further held that the Federal Rules do apply, with the petition and show cause order being treated as a complaint. See United States v. Pritchard, 438 F.2d 969 (5th Cir. 1971), citing Federal Rule 81(a). At the hearing on the show cause order, the court determined that few factual matters were in dispute, and requested the parties to conduct informal discovery to determine if the potential factual disputes could be resolved.

The statute in question, 18 U.S.C.A. § 6004, allows an agency to issue such an order "with the approval of the Attorney General." Here the FTC relies upon a letter of approval signed by Walker B. Comegys, the Acting Assistant Attorney General in charge of the Antitrust Division of the Department of Justice. It points to the following delegation orders issued by the Attorney General under the authority of 28 U.S.C. § 510:

> "The Assistant Attorney General [in charge of the Anti-trust Division is] authorized to exercise the power and authority vested in the Attorney General by § 6004 of title 18, United States Code, to approve the issuance by an agency of the United States of an order compelling testimony or the production of information by a witness in a proceeding before the agency * * *; *provided, however,* that approval shall be granted only with the concurrence of the Assistant Attorney General in charge of the Criminal Division." 28 CFR § 0.175(c), 35 F.R. 19397, Dec. 23, 1970.

> "The Assistant Attorney General in charge of the Criminal Division and the Assistant Attorney [General in charge of the Antitrust Division] are authorized to redelegate the authority delegated by [§ 0.175] to their respective Deputy Assistant Attorney Generals to be exercised solely during the absence of such Assistant Attorney Generals from the City of Washington." 28 CFR § 0.178(a), 35 F.R. 19397, Dec. 23, 1970.

"In the event of a vacancy in the office of head of [the Antitrust Division], the ranking deputy (or his equivalent) in such unit who is available shall perform the functions and duties of and act as such head, unless the Attorney General shall direct otherwise." 28 CFR § 0.132(d), 34 F.R. 20388, Dec. 31, 1969.

It is admitted that Mr. Comegys was the Deputy Assistant Attorney General in charge of the Antitrust Division and that on the resignation of the Assistant Attorney General for the division he had become its Acting Assistant Attorney General.

What is in controversy is whether anyone other than the Attorney General himself can give the approval specified in 18 U.S.C.A. § 6004. Stated another way, are the delegation orders in 28 CFR § 0.175(c), 0.178(a) permissible under that statute? The answer to these questions involves a comparison of the language of § 6004—"approval of the Attorney General"—with that contained in another section of the same act, § 6003—"approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General."

Three explanations can be given for the difference in language. First, the difference may have been inadvertent, indicating no conscious differentiation by Congress in the two sections. Second, Congress may have intended that only the Attorney General personally could give approval under § 6004, while other high level members of his office could have authority to give approval under § 6003. Third, Congress may have intended that only specified high level members of his office could have authority to give approval under § 6003, while leaving the Attorney General with respect to § 6004 with a broader power of delegation under existing 28 U.S.C. § 510.

The legislative history sheds little light on the intent of Congress. How-

ever, House Report No. 91–1549 in its section analysis of § 6004 states:

"It is assumed that the Attorney General will take such . . . steps as are necessary to insure that *his office* is familiar with the immunity-granting procedures of each agency, in order that issuance of such orders might be expedited and no orders will be issued without authorization." (Emphasis added.)

This suggests that persons other than the Attorney General himself were expected to play a function in the approval process. And, indeed, if issuance of such orders was to be expedited, it is doubtful that Congress intended that only the Attorney General personally could give approvals under § 6004.

■ I conclude that the third explanation should be adopted—that Congress, by failing to specify in § 6004 (as it had in § 6003) additional persons in the Attorney General's office who could grant approvals, intended to give the Attorney General the broader range of authority to delegate existing under 28 U.S.C. § 510. It is of significance that the predecessor of this legislation, 18 U.S.C. § 2514, had contained the words "approval of the Attorney General" and that, in practice later endorsed by the courts, this had permitted delegation under 28 U.S.C. § 510. December 1968 Grand Jury v. United States, 420 F.2d 1201 (7th Cir. 1970); United States v. DiMauro, 441 F.2d 428 (8th Cir. 1971). On the other hand, use of additional words such as found in § 6003 has been held to indicate a limitation upon the power to delegate. See United States v. Robinson, 468 F.2d 189 (5th Cir., # 71–1058, Jan. 12, 1972); *cf.* United States v. Pisacano, 459 F.2d 259 (2nd Cir. 1972). That Congress has not forgotten about the general power of delegation existing under 28 U.S.C. § 510, see the explicit language in the Civil Rights Act of 1968, 18 U.S.C.A. § 245(a)(1).

Support for this conclusion can be found by noting another difference in §§ 6003 and 6004. In § 6003, the key value judgment (*i.e.,* necessary to the public interest) is to be made solely by personnel of the Department of Justice. In § 6004, that judgment is essentially the responsibility of another agency of government, with the Department of Justice playing a secondary role. It would be somewhat incongruous if only the Attorney General personally could perform the "secondary" role under § 6004, while permitting his subordinates to perform the functions under § 6003 for which the Department of Justice must bear the sole responsibility to the public.

■ The defendants next argue that Comegys, the *Acting* AAG, had not been delegated authority under § 6004. This is but a matter of interpretation of the published delegation orders. I find nothing in Order 445–70, as published in 35 F.R. 19397, December 23, 1970, to indicate that the Attorney General intended thereby to revoke for such purposes the provisions of 28 CFR § 0.132(d) which direct—not merely empower—a ranking deputy such as Comegys to perform the functions of the Assistant Attorney General upon a vacancy in that office. In the absence of clear language to the contrary, I conclude that 28 CFR § 0.132(d) remains in effect for purposes of the approval process covered in Order 445–70—particularly since the logical extension of the defendants' contention would result in an hiatus of dire consequences should, for example, there be a vacancy in the office of the Attorney General himself. It should further be noted that 28 CFR § 0.178(a) reflects the willingness of the Attorney General to have a ranking Deputy perform the functions of the AAG during his temporary absence.

The defendants finally argue that there was—or may have been (for which formal discovery is needed)—a failure to obtain the concurrence of the Assistant Attorney General in charge of the Criminal Division, as required by the last clause of 28 CFR § 0.175(b). Several reasons are urged by defendants,

each aimed at a purported failure in the Attorney General's office to follow its own procedures.

■ They point out that the FTC's request for approval was transmitted to the attention of the Criminal Division of the Attorney General's office (rather than to the Antitrust Division, to which only an informational copy was sent). They also note that the purported concurrence of the AAG, Criminal Division, was given prospectively, and apparently before request from the AAG, Antitrust Division. The court concludes that these matters are immaterial—to establish an internal "clearing house", it was quite appropriate to designate the Criminal Division; and that "concurrence" under 28 CFR § 0.175(b) can be given in the following form, albeit prospective and anticipatory:

> "I defer to your judgment as to the advisability of approving the request for authority to issue an order to compel the testimony of this person [named above] pursuant to 18 U.S.C. 6004, and, if you decide the approval of the request is warranted, will concur in your approval pursuant to 28 C.F.R. 0.175."

The memoranda of concurrence, in the form above indicated, were given to Comegys by an internal communication showing it to be from Henry E. Petersen, Assistant Attorney General, Criminal Division. Unsigned, it does bear the initials "HEP" opposite his name. Defendants assert that their informal discussions with personnel of the Attorney General's office undertaken at the Court's instruction following the show cause hearing casts doubt on whether Petersen (or his ranking deputy) initialed the memoranda or otherwise gave the purported concurrence any personal attention. According to the defendants they have been unable to elicit this information by informal means, and they therefore seek formal discovery. The FTC, represented in this case by personnel of the Department of Justice, argues that the personal concurrence of Peter-

sen or his deputy was not required, or was an iregularity without significance —at least by implication giving some support to the defendants' view of the facts. The affidavits submitted are conspicuous in failing to indicate the extent, if any, of participation by Petersen or his deputy in the purported concurrence. There appears to be some substance to the defendant's assertion—and not a mere conjecture as to an irregularity. *Cf.* United States v. Rucker, 435 F.2d 950 (8th Cir. 1971).

I conclude that the failure of Petersen or his deputy to have personally concurred in the Comegys' approval would —if established—be contrary to the directive of the Attorney General as published in Order 445–70. While, under 28 U.S.C. § 510, he could have delegated such authority to lower ranked personnel, he chose not to do so, as is obvious from a reading of 28 CFR § 0.-178(a), which relates not merely to the other divisions of the Department, but also to the Criminal Division.

But before a decision in this case be further prolonged for discovery or trial on a potential factual dispute, it is appropriate to decide as to the materiality of that dispute—here, whether the defendants could take advantage of the procedural irregularity if so proved. See Venn v. United States, 400 F.2d 207 (5th Cir. 1968), footnote 12 at page 208; *cf.* United States v. Pritchard, 438 F.2d 969 (5th Cir. 1971).

■ Regulations once adopted are binding upon the adopting governmental agency. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). But for actions taken contrary to regulations to be invalidated for that reason, some prejudice must be shown or apparent. See, for example, Pacific Molasses Co. v. FTC, 356 F.2d 386 (5th Cir. 1966).

In the present case it is neither shown nor apparent that defendants have suffered any prejudice by reason of the as-

sumed failure of Petersen or his deputy to have personally participated in the concurrence given for the Criminal Division. The regulations indicate that principal responsibility for approval was being given by the Attorney General to the AAG in charge of the division having cognizance over the subject matter (*i. e.*, here the Antitrust Division). The assignment therein to the Criminal Division of a "concurrence" role is in part explained by a letter of January 29, 1971, from the Deputy Attorney General as follows:

"The Criminal Division has been designated by the Attorney General to act as a central 'clearing house' and a records repository. Accordingly, requests for authorization to issue immunity orders should be directed to the Immunity Unit of the Criminal Division, which in turn, will direct agency requests to the proper Division having cognizance of the Act under which the agency proceeding is being conducted."

Moreover, in the concurrence letters prepared for Petersen, the limited extent of the role played by the Criminal Division (as seen by itself) is indicated: "We have searched our files for information with respect to the following person for whom immunity clearance has been requested: [naming the person]."

Department of Justice personnel, arguing for the FTC, urge—and, I conclude, convincingly—as follows:

"The purpose and function of the Criminal Division in concurring in the approval and authorization by the Antitrust Division of the issuance of the instant immunity orders is a housekeeping function to facilitate the orderly and coordinated operation of the Department of Justice under 18 U.S.C. § 6001 et seq. That function is intended merely to provide, as a matter of intradepartmental comity, an opportunity for the Criminal Division to determine whether a grant of immunity might embarrass an on-going investigation or a current or prospective criminal matter with the Criminal Division. The concurrence is, therefore, merely a statement that the Criminal Division has no objection to the proposed immunization, but assumes no responsibility of overview."

■ Assuming *arguendo* that proof could be discovered showing the lack of personal attention by Petersen or his deputy, I nevertheless conclude that this would be a deviation from a regulation designed for the benefit of the government, of a "housekeeping" nature, and from which the defendants would not have suffered prejudice. See Centex Const'n Co. v. United States, 162 Ct.Cl. 211, 221 (1963); Starzec v. United States, 145 Ct.Cl. 25, 31 (1959).

There being no material issues of fact requiring discovery or resolution by trial, the FTC is entitled to an appropriate order compelling the testimony of the defendants.

Therefore, upon the findings and conclusions and for the reasons indicated, it is ordered, adjudged and decreed that Norman J. Foucha, Bobby G. Smith, Robert L. Campbell and Jean Smith be, and they hereby are, directed to appear before a duly appointed administrative law judge of the Federal Trade Commission at a time and place to be designated on behalf of the Federal Trade Commission, and then and there to testify in accordance with the subpoenas ad testificandum issued by the Commission on March 8, 1972.

It is further ordered that the costs of this proceeding be taxed against the defendants named in the foregoing paragraph.