MISSOURI NATIONAL EDUCATION ASSOCIATION, Appellant,

v.

MISSOURI STATE BOARD OF MEDIATION, Respondent

Belton, Missouri School District, Respondent-Appellant.

No. 66634.

Supreme Court of Missouri, En Banc.

Sept. 10, 1985.

Charles A. Werner, St. Louis, for appellant.

William L. Webster, Atty. Gen., Mark Siedlik, Asst. Atty. Gen., Carl S. Yendes, Asst. Atty. Gen., Jefferson City, for respondent.

E.J. Holland, Jr., Georgann H. Eglinski, Kansas City, Elvin S. Douglas, Harrisonville, for respondent-appellant.

DONNELLY, Judge.

This is a public sector labor law case involving the Belton, Missouri School District (District), the Missouri National Education Association (MNEA) and the Missouri State Board of Mediation (Board). The MNEA petitioned the Board pursuant to the Public Sector Labor Law, §§ 105.500, et seq., RSMo 1978, for certification as exclusive bargaining representative of all clerical employees, teacher aides and school nurses employed by the District. Following an evidentiary hearing, a majority of the Board determined that twelve secretaries which the MNEA sought to include within the bargaining unit were "confidential" employees and should be excluded. At an election conducted pursuant to Board Rule 8 CSR 40–2.160, the MNEA was chosen by a majority of members of the bargaining unit as their exclusive bargaining representative. The ballots cast by the twelve secretaries excluded from the unit were not counted and remain sealed.

The MNEA and the District each appealed the decision of the Board to the circuit court pursuant to § 105.525, RSMo 1978. The District contended that the certification election was unlawful as in violation of Board Rule 8 CSR 40–2.160(1) because one of the persons designated as an observer for the election was not a non-supervisory employee of the District. The MNEA contended that the Board committed errors of fact and law in excluding the twelve secretaries from the bargaining unit. The circuit court consolidated the petitions and, after review, affirmed the decision of the Board. The decision of the Board was again affirmed on appeal to the Western District of the Court of Appeals.

We ordered transfer of this case because of its general interest and importance. Rule 83.03; Mo. Const. art. V, § 10. We now consider and decide this cause as if the appeal had originally been brought in this Court. *Id.* It is the decision of the Board which we review and not the judgment of the circuit court. *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985).

The District's sole point on appeal is that the results of the certification election should be set aside for failure to comply with Board Rule 8 CSR 40–2.160(1) which provides as follows:

Each of the interested parties may designate two (2) persons as observers at the polls, subject to such limitations as the chairman may prescribe. Unless otherwise stipulated by the interested parties, observers must be non-supervisory employees of the public employer.

The District argues that Audrey Bimby, the person designated by the MNEA as its observer for the election, was not a non-supervisory employee of the District and, in fact, was the MNEA's own employee. The

District concludes that Ms. Bimby was unqualified to serve as observer and that her presence at the polls tainted the election.

■ Rules of a state administrative agency duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding upon the agency adopting them. *See Page Western, Inc. v. Community Fire Protection District of Saint Louis*, 636 S.W.2d 65, 68 (Mo. banc 1982). *See generally*, 73 C.J.S. *Public Administrative Law and Procedure* § 97 (1983). Nevertheless, the failure of an agency to comply with its own rules may invalidate its actions only when prejudice results. *See, e.g., Port of Jacksonville Maritime Ad Hoc Committee, Inc. v. Hayes*, 485 F.Supp. 741 (M.D.Fla.1980) *aff'd*, 620 F.2d 567 (5th Cir.1980); *FTC v. Foucha*, 356 F.Supp. 21 (N.D.Ala.1973).

■ Assuming, without deciding, that Board Rule 8 CSR 40–2.160(1) prohibits employees of a labor union who are not "non-supervisory employees of the public employer" from serving as observers, we fail to see how any of the interested parties could have been prejudiced by Bimby's mere presence at the polls. The District's objections to the conduct of the election were fully investigated by the chairman of the Board pursuant to Board Rule 8 CSR 40–2.160(8) and were overruled. The investigation by the chairman was confirmed by a stipulation subscribed by each of the three persons who acted as an observer for the election. The stipulation recited that, prior to election, none of the interested parties voiced any objection regarding the qualifications of the persons selected to serve as observers when given such an opportunity by the chairman. The observers further stipulated that "[d]uring the hours of the election * * * none of the parties [observers] left the polling location and no electioneering, intimidation, or coercion was observed * * *." The record is void of any evidence indicating irregularity in the election proceedings. We conclude that the mere presence of a union employee at the election site, without more, was not inherently destructive of the conditions necessary for a fair election and the election results should stand.

■ Prior to reviewing the MNEA's contention that twelve secretaries were erroneously excluded from the bargaining unit by the Board, we note that while we are obliged to defer to the findings of fact made by the Board insofar as they are supported by competent and substantial evidence, the final determination of questions of law and the final interpretation of the meaning of statutes are part of the judicial function vested in this Court. *St. Louis County v. State Tax Commission*, 562 S.W.2d 334, 337–38 (Mo. banc 1978); *Howlett v. Social Security Commission*, 149 S.W.2d 806, 810 (Mo. banc 1941). We review the MNEA's contention that the twelve secretaries at issue are not impliedly excluded from the coverage of the Public Sector Labor Law by reason of being "confidential" employees as a question of law. *See City of Cabool*, 689 S.W.2d at 54.

■ Although § 105.510, RSMo 1978, uses the word "employees" without additional specificity in describing the composition of a bargaining unit, the legislature did not intend for all persons on the public payroll to be considered employees for bargaining purposes. *See City of Columbia Missouri v. Missouri State Board of Mediation*, 605 S.W.2d 192, 194 (Mo.App.1980); *Golden Valley Memorial Hospital District v. Missouri State Board of Mediation*, 559 S.W.2d 581, 583 (Mo.App.1977). In the course of labor relations, someone must act on behalf of the public employer and it is the responsibility of the Board to exclude from an otherwise appropriate bargaining unit "those employees, if any, whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees." *Golden Valley Memorial Hospital District*, 559 S.W.2d at 583.

■ Among the categories of employees whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees are "managerial" employees and "confidential" employees. *See*, Shaw & Clark, Determination of Appropriate Bargaining Units in the Public Sector: Legal and Practical Problems. 51 Or.L.Rev. 152, 168–171 (1971). "Managerial" employees formulate, determine or effectuate policies on behalf of their employer while "confidential" employees are persons who, in the normal performance of their duties, have access to confidential information affecting the employer-employee relationship. *Id.* at 170–171. "Management" employees and "confidential" employees are excluded from the bargaining unit either because their inclusion could create conflicts of interest in the performance of their duties or because they lack sufficient community of interest with other workers. *See Westinghouse Electric Corp. v. NLRB*, 398 F.2d 669, 670 (6th Cir.1968); *Retail Clerks International Ass'n. v. NLRB*, 366 F.2d 642, 644–45 (D.C. Cir.1966); cert. denied, 386 U.S. 1017, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967). *See also* Comment, Bargaining Units for State and Local Employees, 39 Mo.L.Rev. 187, 198 (1974). The Board has consistently taken the position that the definition of "employee" in § 105.510, RSMo 1978, excludes both "managerial" and "confidential" employees. *See, e.g., St. Genevieve Federation of Classified Employees Local 4126, a/w American Federation of Teachers, AFL–CIO v. St. Genevieve School District, R–II,* Public Case No. 80–036 (1982).

In an effort to define the appropriate breadth of the "confidential" employee exclusion under the Public Sector Labor Law, the Board has traditionally placed great reliance on the decisions of the National Labor Relations Board (NLRB), the body established by Congress to administer the National Labor Relations Act (NLRA) 29 U.S.C. §§ 141 et seq. (1973). The NLRB has recognized that certain "confidential" employees should be excluded from the bargaining unit even though the NLRA, like the Public Sector Labor Law, does not expressly exclude "confidential" employees from its coverage. However, in contrast to the position taken by the Board, that "confidential" employees are not "employees" within the meaning of the Public Sector Labor Law, the NLRB has adopted the position that "confidential" employees are not impliedly excluded from the definition of "employee" under the NLRA. *See NLRB v. Hendricks County Rural Electric Membership Corp.,* 454 U.S. 170, 177–78, 102 S.Ct. 216, 222, 70 L.Ed.2d 323 (1981). Nevertheless, in the course of fulfilling its obligation to determine appropriate bargaining units under § 9 of the NLRA, the NLRB has adopted a policy of excluding those "confidential" employees with a "labor-nexus"; i.e., those employees acting in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations. *Id.* at 178, 102 S.Ct. at 222. *See, also, NLRB v. Rish Equipment Company,* 687 F.2d 36, 37 (4th Cir.1982). The Supreme Court of the United States has determined that the NLRB's "labor-nexus" limitation on the class of employees which may be included in bargaining units determined under the NLRA has a reasonable basis in law. *Hendricks County Rural Electric Membership Corp.,* 454 U.S. at 190, 102 S.Ct. at 228.

In the case at hand, the Board expressly abandoned the labor-nexus test and adopted the position that "an employee must be considered confidential, and thus, not an 'employee' under section 105.510 if there exists a confidential relationship between the employee and managerial or supervisory employees." The Board reasoned that the labor-nexus test was "too narrow to provide a workable basis * * * [to] identify those employees whose interests are more closely allied to the public employer than to the rank and file employees."

In its brief, the MNEA urges this Court to "remand the case to the Board with

directions to reinstate the 'labor nexus' test for determining confidential employees; and, then, upon remand, to apply the 'labor nexus' test to the 12 employees whose ballots were challenged." For a number of reasons we decline to convert what has heretofore been a matter of administrative policy into court-declared law.

As noted above, all persons on the public payroll are not "employees" within the meaning of § 105.510, RSMo 1978, and it is significant that the legislature chose to use the broad term "employees" without definition, to describe the permissible composition of a bargaining unit. In this instance, the logical body to develop the meaning of the term "employees" is the one to which the legislature committed the administration of the statute. *Cf. New Hampshire Department of Revenue Administration v. Public Employee Labor Relations Board,* 117 N.H. 976, 380 A.2d 1085 (1977). What was said by the United States Supreme Court in regard to declaring the meaning of the term "employee" in § 2(3) of the NLRA is apposite here:

> It is not necessary in this case to make a completely definitive limitation around the term "employee." That task has been assigned primarily to the agency created * * * to administer the Act. * * Everyday experience in the administration of the statute gives it familiarity with the circumstances and backgrounds of employment relationships in various industries, with the abilities and needs of the workers for self organization and collective action, and with the adaptability of collective bargaining for the peaceful settlement of their disputes with their employers. The experience thus acquired must be brought frequently to bear on the question who is an employee under the Act. Resolving that question, like determining whether unfair labor practices have been committed, "belongs to the usual administrative routine" of the Board.

*NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944).

It remains to be seen whether the guidelines articulated by the Board in the present case will prove satisfactory in resolving the question of whether particular employees who have been entrusted with confidential information are, in fact, acting directly or indirectly in the interest of the employer in relation to other employees. Nevertheless, "[t]he wisdom of the principle adopted is none of our concern." *Securities and Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 207, 67 S.Ct. 1575, 1582, 91 L.Ed. 1995 (1947). In the event that the guidelines announced by the Board in this case prove to be unworkable, the Board is free to modify or discard them. "[T]here is no application of the doctrine of stare decisis to administrative tribunals." *City of Columbia,* 605 S.W.2d at 195.

Our function is to determine whether application of the Public Sector Labor Law to the facts of this case supports the unit of representation certified by the Board. *City of Cabool,* 689 S.W.2d at 54–55. The District is comprised of a senior high school, a junior high school, four elementary schools and a central administrative office. Of the twelve secretaries excluded from the bargaining unit by the Board, four are assigned to the central administrative office, while the other eight are assigned each to the six school principals and to the two assistant principals.

The four secretaries assigned to the central administrative office, Jean Boston, Joyce Halley, Wilma Long and Alma Jane Phillips work closely with the superintendents of the District and the members of the Board of Education. Jean Boston is responsible for coordinating receipts and expenditures of the District in preparation of the annual audit and also serves as secretary to the Board of Education. Joyce Halley is responsible for depositing the District's receipts into the proper account and also helps the superintendent of the District prepare to negotiate teachers' salaries by formulating projections of the fiscal impact of proposed salary increases on the

District's budget. Wilma Long is responsible for processing monthly payments made by the District and also coordinates student attendance figures supplied to the administrative office by the individual schools. Alma Jane Phillips works as a secretary for the superintendent and the two assistant superintendents and also serves as a receptionist. Ms. Phillips is required to type any correspondence originating in the central office and, like Ms. Halley, has prepared budget projections for the District for use in salary negotiations with teachers. The secretaries interchange responsibilities whenever the need arises.

The secretaries assigned to the individual principals and assistant principals each perform virtually identical tasks. The duties of these secretaries include: maintaining student attendance records; enrolling new students; answering the telephone; and typing correspondence and performing general secretarial duties for the principals, assistant principals, and teachers. In addition, the secretaries are responsible for contacting substitute teachers when the need arises and have considerable discretion in determining which substitute teachers will be selected from a list prepared by the central administrative office. The secretaries also type teacher performance evaluations prepared by the principals and assistant principals. The performance evaluations provide a basis upon which the principals and assistant principals determine whether to recommend that the District continue to employ particular teachers. Statements prepared by the principals and assistant principals relating to formal grievances filed by teachers are also typed by the secretaries. The secretaries have access to portions of the teachers' personnel records which are maintained at the schools. The personnel files retained at the schools contain copies of all performance evaluations, documents pertaining to the disposition of formal grievances filed by teachers, "personal comments" made by a principal or assistant principal about particular teachers regarding such matters as

chronic tardiness, and records of disciplinary action taken against teachers. The personnel files are considered highly confidential and, ordinarily, the only persons with access to them are the principals, assistant principals and secretaries.

■ We believe that competent and substantial evidence supports the conclusion that the twelve secretaries at issue are confidential employees and are impliedly excluded from the coverage of the Public Sector Labor Law. It is clear from the record that the superintendents and members of the Board of Education are the persons primarily responsible for developing the District's labor relations strategem and that the four secretaries assigned to the central administrative office occupy positions of trust with these individuals. The exclusion of the four secretaries assigned to the central administrative office then is consistent with the previous decisions of the Board in which secretaries acting in a confidential capacity to management personnel who formulated, determined and effectuated policies in the field of labor relations were found to be "confidential" employees and not "employees" within the meaning of § 105.510, RSMo 1978. *See International Brotherhood of Electrical Workers, Local Union No. 753 AFL–CIO v. City Utilities of Springfield,* Public Case No. 79–925 (1979); *Miscellaneous Drivers and Helpers Union v. City of Arnold, Missouri,* Public Case No. 75–120 (1976); *Local Union 95, International Brotherhood of Electrical Workers v. City of Monett,* Public Case Nos. 106 and 107 (1976). We believe that in enacting § 105.-510, RSMo 1978, the legislature did not intend that management should "be required to handle labor relations matters through employees who are represented by the union with which the company is required to deal and who in the normal performance of their duties may obtain advance information of the company's position with regard to contract negotiations, the disposition of grievances, or other labor

relations matters." *Westinghouse Electric Corp.*, 398 F.2d at 670, quoting *The Hoover Company*, 55 N.L.R.B. 1321, 1323 (1944). The Board correctly concluded that the four secretaries assigned to the administrative office were "confidential" employees and not "employees" within the meaning of § 105.510, RSMo 1978.

■ The Board also properly concluded that the secretaries assigned to the individual principals and assistant principals are "confidential" employees. The principals of the District have participated to a limited extent in the bargaining process in that the panel which has represented the District during meetings held for the purpose of negotiating teachers' salaries has included a principal as one of its members. Moreover, the principals and assistant principals are the sole representatives of the District with whom the teachers and other school personnel have daily contact and are indispensable in *effectuating* the labor relations policies of the District. The principals and assistant principals are required to evaluate the performances of teachers and recommend whether particular teachers should be retained by the District. The duties of the principals and assistant principals also include reviewing grievances filed by teachers and initiating disciplinary action against teachers.

The secretaries work closely with the principals in all labor relations matters and occupy a position of trust upon which the principals must rely. In the course of performing their duties, the secretaries are privy to all correspondence between the principals and the administration and the principals and other teachers, and have access to personnel files which are considered highly confidential. Based on the record of this case, we conclude that by virtue of the nature of their responsibilities and their access to confidential information affecting the employer-employee relationship, each of the eight secretaries assigned to an indi-

vidual principal or assistant principal is a "confidential" employee properly excludable from the bargaining unit.

The order of the Board should be enforced.

The judgment is affirmed.

HIGGINS, C.J., BILLINGS and WELLIVER, JJ., and SMITH, Special Judge, concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in separate opinion of BLACKMAR, J.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.

BLACKMAR, Judge, dissenting.

The denial to the twelve secretarial employees of the very limited collective bargaining rights afforded by §§ 105.500 through 105.530, RSMo 1978, is contrary to the policy of the Missouri Constitution, Art. I, Sec. 29,[1] and to the policy of the governing statute.

Collective bargaining rights for industrial employees in interstate commerce were established by the National Labor Relations Act, Pub.L. No. 74–198, 49 Stat. 449 (1935) (codified as amended at 29 U.S.C. §§ 151–169 (1982)). Employees of federal and state governmental agencies were excluded from the coverage of the federal statute, but our legislature accorded limited bargaining rights in Laws of 1965, p. 232, which is the predecessor of § 105.500. The rights are closely confined. Public employees may choose representatives who may "meet, confer and discuss ... proposals relative to salaries and other conditions of employment." The results of the conference are reduced to writing and presented to the governing body, which has full authority to adopt, modify or reject the

1. That employees shall have the right to organize and to bargain collectively through representatives of their own choosing. Art. I, Sec. 29, Mo. Const.

proposals. The bargaining agent has no other recourse. The right to strike is specifically excluded, § 105.530, and is inappropriate in the public sector.

As the principal opinion points out, the statute contains no express exclusion of "confidential" employees. The State Board of Mediation, following the lead of the National Labor Relations Board, has implied an exemption so that management's bargainers may preserve confidences about labor contracts and collective bargaining negotiations. The exemption has previously been limited to employees whose supervisors are directly involved in collective bargaining, through the use of the "labor nexus" test borrowed from the National Labor Relations Board. Now the State Board of Mediation, out of the blue, announces a new test by excluding employees "if there exists a confidential relationship between the employee and managerial or supervisory employees." This test would apparently operate to exclude almost all clerical and secretarial employees.

I agree that deference is due to the State Board of Mediation on the numerous judgment calls which must be made in determining the appropriateness of a bargaining unit and on the propriety of including particular employees. In so doing the Board acts to effectuate the policy announced by the Legislature. The Board, however, is not a policy-making agency and its present change of course flies in the face of the policies of the statute. It is reasonable to assume that the legislature intended public employees to have and enjoy the rather narrow rights it granted them and that exceptions should be implied sparingly. It is also reasonable to assume that the legislature has been satisfied with the labor nexus test, as applied over the years. The abrupt change of position by the state Board of Mediation is arbitrary and capricious.

No reason has been demonstrated to justify the changes. Many employees stand in a confidential relation to supervisors. This has not previously been considered justification for denying them all rights of organization and bargaining.[2] The primary duty of all employees is to the employer.

I would remand the case to the Board with directions to proceed in accordance with the labor nexus test, rather than under its new policy. The exclusion of the secretaries assigned to the individual principals is wholly arbitrary and lacking in foundation. What the argument comes down to is that these secretaries have access to certain confidential files. This circumstance has not been considered significant, up to now. Even secretaries having access to confidential information must buy groceries and pay rent. This same problem has been analyzed by the Supreme Court of Pennsylvania, which concluded that principals' secretaries need not be excluded from a bargaining unit as "confidential" employees. *Pennsylvania Labor Relations Board v. Altoona Area School District*, 480 Pa. 148, 389 A.2d 553 (1978). No harm to the employing district can be perceived if they are allowed to join a bargaining unit with their fellow employees. This is especially so when the bargaining agent has no real clout.

Because the initial decision should be made by the Board, I will not analyze the situation of the four employees in the central administrative office. Perhaps a good case can be made for excluding some of these secretaries from the bargaining unit under the labor nexus test. The recital in the principal opinion that "Wilma Long is responsible for processing monthly payments made by the district and also coordinates student attendance figures supplied to the administrative office by the individu-

---

**2.** *See Westinghouse Electric Corp. v. NLRB,* 398 F.2d 669 (6th Cir.1968)—secretary to supervisor who spent less than 10% of his time on labor relations, not excludable; *Swift & Co.,* 119 NLRB 1556 (1958)—quality control; *Automatic Electric Co.,* 78 NLRB 1057 (1948)—access to personnel files.

al schools," is particularly unpersuasive as to why she should be denied the services of a collective bargaining agent, if her fellow employees choose to have one.[3] *Cf. Pennsylvania Labor Relations Board v. Altoona Area School District, supra.*

I would reverse the judgment and would remand the case to the State Board of Mediation for further proceedings consistent with the views here expressed.

---

3. The union is playing a game of Russian Roulette. The ballots of the excluded secretaries have been segregated and remain uncounted. If more ballots are admitted to the pool, the union's 14–10 margin could conceivably be reversed.