Robert BAER, President; John Frank, Vice–President, James Mossbacher, Purchasing Member, and Vincent Schoemehl, Jr., Ex–Officio Member, in their Official Capacity as Members of the Board of Police Commissioners, City of St. Louis, Appellants,

v.

CIVILIAN PERSONNEL DIVISION, ST. LOUIS POLICE OFFICERS ASSOCIATION and Patricia Smith, individually and as representative, Respondents.

No. WD 39388.

Missouri Court of Appeals, Western District.

Jan. 5, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1988.

Application to Transfer Denied April 19, 1988.

Paul J. Schroeder, Jr., Kenneth L. Heininger, St. Louis, for appellants.

Bruce C. Cohen, Bruce S. Feldacker, St. Louis, for respondents.

Before PRITCHARD, J., Presiding, and GAITAN and COVINGTON, JJ.

COVINGTON, Judge.

The St. Louis Board of Police Commissioners (hereafter "Commissioners") appealed a final decision of the Missouri State Board of Mediation (hereafter "Board") to the Cole County Circuit Court. The circuit court confirmed the Board's decision. In this court the Commissioners allege the Board erred in its decision that civilian employees of the police department are not "police" within the meaning of § 105.510 [1], in certifying respondent Civilian Personnel Division (hereafter "CPD") as a public employee representative, and in failing to exclude from the bargaining unit certain employees. Judgment affirmed.

In April, 1984, the CPD of the St. Louis Police Officers Association filed a petition pursuant to § 105.525 seeking certification as the exclusive bargaining representative of a bargaining unit consisting of all civilian employees of the St. Louis Metropolitan Police Department, excluding professional employees and supervisors.

After hearing, the Board issued its decision finding that the proposed bargaining unit was appropriate. An election was held in March 1985. The Commissioners filed timely objections to conduct affecting the results of the election. The Board denied the Commissioners' objections and subsequently determined that the CPD had majority representative status. The Board certified the CPD as the exclusive bargaining representative for civilian employees excluding professional employees and supervisors. The Commissioners filed a petition for review of the decision of the Board in the Cole County Circuit Court; the circuit court found that the decision of the Board was supported by competent and substantial evidence upon the record as a whole and affirmed the Board's decision.

On review, this court defers to the Board's findings of fact insofar as they are supported by competent and substantial evidence. Determination of questions of law and interpretation of the meaning of the statutes are part of the judicial function vested in the appellate court. *Jackson County v. Missouri State Board of Mediation*, 690 S.W.2d 400, 402 (Mo. banc 1985).

■ The first issue is whether civilian employees of a metropolitan police department constitute "police" within the meaning of § 105.510. The Missouri Public Sec-

---

1. All statutory references are to RSMo 1986 unless otherwise noted.

tor Labor Law bars police and deputy sheriffs, among others, from exercising limited bargaining rights which the statute grants to other public employees. Section 105.510 provides in relevant part:

Employees, except police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing.

The statute does not define "police"; however, the Missouri Supreme Court, in determining the legislative purpose of this statute, has interpreted police to mean "persons engaged in law enforcement who, regardless of job title, perform duties and functions substantially comparable to those performed by police and deputy sheriffs." *Id.* at 402. The court stated, citing numerous authorities, that "police" is defined as "an organized civil force for maintaining public order, preventing and detecting crimes and enforcing the laws." *Id.* at 403.

The Commissioners adduced evidence that civilian personnel are involved in various areas of the St. Louis Police Department. Complaint evaluators answer and evaluate emergency calls and complaints. Dispatchers and assistant dispatchers communicate with uniformed officers for a multitude of purposes. Those civilians employed in planning and development work together with commissioned officers to provide planning and police development. Others provide administrative and clerical support to the commissioned officers. The Commissioners' assertion that these individuals perform crucial tasks in assisting commissioned officers is not in dispute. These employees, however, lack the power of arrest. They are not commissioned, do not wear uniforms, do not carry a weapon, and are not entitled to a police board hearing in the event of disciplinary action. No evidence indicates the civilian employees investigate crimes or enforce general laws. The Commissioners' own witness admitted a clear distinction in duties between civilian

employees and commissioned officers. In distinguishing correction officers from police, the Missouri Supreme Court in *Jackson County*, 690 S.W.2d at 403, held:

While it appears that correction officers may indeed perform certain limited police functions, we are not convinced they possess sufficient attributes of police or deputy sheriffs to warrant bringing them within the bar of the statute. Aside from supervising the inmates under their charge, the correction officers are not empowered to engage in any police work, either by investigating crimes or enforcing general laws. Nor do they have the status or training of police personnel. Corrections officers do not wear uniforms, they are not sworn or commissioned, and they do not carry a firearm except when transporting a prisoner outside the jail.

The Board properly distinguished between the significant support roles provided by the civilian employees and the role of commissioned officers in maintaining public order, preventing and detecting crime and enforcing the laws. The civilian employees are not police for purposes of the statute.

■ The Commissioners next contend the Board erred in certifying the CPD as a public employee representative because the CPD is an inappropriate bargaining representative. Section 105.525 provides that "Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation." The Commissioners assert in their first subpoint relating to appropriateness of the bargaining representative that the CPD is not a "labor organization". Section 105.520 provides that the "labor organization which is the exclusive bargaining representative of its employees in a unit appropriate" is the entity with whom the public body shall meet, confer, and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body. Section 105.500, the definitional section of the Public Sector Labor Law, does not define "labor organization". In efforts to define certain language contained in the

Public Sector Labor Law, the Board previously has relied upon the National Labor Relations Act as interpreted by the National Labor Relations Board. *Missouri National Education Association v. Missouri State Board of Mediation*, 695 S.W.2d 894, 898 (Mo. banc 1985). The National Labor Relations Act, 29 U.S.C. § 152(5), defines "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." The seemingly broad scope of the statutory definition is confirmed by the United States Supreme Court in *Marine Engineers Beneficial Associates v. Interlake S.S. Company*, 370 U.S. 173, 182, 82 S.Ct. 1237, 1242, 8 L.Ed.2d 418 (1962):

> [W]e conclude that the task of determining what is a 'labor organization' in the context of § 8(b) must in any doubtful case begin with the National Labor Relations Board, and that the only workable way to assure this result is for the courts to concede that a union is a 'labor organization' for § 8(b) purposes whenever a reasonably arguable case is made to that effect.'

The CPD was created by motion of the St. Louis Police Officers Association, a self-designated labor organization whose membership is composed of any members of the Police Department, specifically including civilian employees. By motion of the Association, made and passed at meetings held for the purpose or organizing civilian employees, the purpose of the CPD was set forth:

> The St. Louis Police Officers Association, Civilian Personnel Division, herein established, shall have the purpose in part of representing civilian employees of the Board of Police Commissioners, City of St. Louis, concerning their wages, hours, and working conditions and matters related thereto; to further the professional development of the membership and to promote the moral, social and material standing of the members.

At the time of hearing, the civilian employees, through the CPD, were beginning preparatory work for submitting proposals regarding wages, hours and working conditions at such time as the CPD might become certified. The Commissioners base their argument that CPD is not a labor organization on evidence related to the seminal nature of the fledgling organization which, at the time of the hearing, had not completed its bylaws, opened a bank account, nor obtained its own offices. The Board, however, found the CPD to be self-governing. Persuasive evidence was introduced to show that the CPD was writing its own bylaws separate from the association. The civilians had elected their own executive board, and conducted their own meetings. Commissioned police officers could not veto any action taken by the CPD nor dictate the terms and conditions of any agreements that the civilians might reach covering wages, hours or working conditions. Only civilians could ratify any agreement reached. Uniformed officers were not eligible for membership in the CPD and civilian employees were not eligible for membership in the uniformed division. After the organizational tasks were complete, CPD would collect its own dues and reimburse the Association for any support services which might have been provided by the Association.

The Board found that the evidence established the CPD to be a distinct and self-governing organization. The Board's findings of fact as to these elements is supported by competent and substantial evidence upon the whole record. Applying the law to these facts, this court affirms the Board's determination that the CPD is a "labor organization."

■ In their second subpoint relative to the appropriateness of the bargaining representative, the Commissioners contend the CPD is under the control and direction of the Police Officers Association and is consequently indistinguishable from the Association, which is composed of uniformed officers. This relationship, argue the Commissioners, will cause inevitable disruption of law enforcement functions once the CPD

is certified and begins collective bargaining. As determined in discussions of the subpoint above, the CPD is distinct from the Association for collective bargaining purposes.

The Commissioners further contend the CPD is so closely connected with the Association that public policy prohibits certification. The Commissioners' argument, based upon alleged public policy considerations, is presented without authority and is without merit.

■ In its third subpoint regarding inappropriateness of the bargaining representative, the Commissioners assert that the CPD is dominated by supervisors. Although the Commissioners do not so state, presumably they intend this allegation to relate to the concept that the legislature did not intend for all persons on the public payroll to be considered employees for bargaining purposes. *Missouri National Education Association v. Missouri State Board of Mediation*, 695 S.W.2d at 897. The Board consistently takes the position that the definition of "employee" in § 105.510 excludes both "managerial" and "confidential" employees. *Id.* at 898. Managerial or supervisory employees are excluded from the bargaining unit either because their inclusion could create conflicts of interest in the performance of their duties or because they have an insufficient community of interest with other workers. *Id.* at 898.

The Commissioners focus on the positions of paymaster and chief clerk. The Board expressly found that the position of paymaster is supervisory and excluded this employee from the bargaining unit. On the basis of substantial evidence, set forth below when addressing the Commissioners' final point on appeal with respect to supervisory positions, the Board found the chief clerk position not to be supervisory. Only one of the executive body of the CPD (four officers and additional members at large) was deemed by the Board to have been supervisory; that individual, the paymaster, has been excluded from the bargaining unit by the Board. The Board's finding of

appropriateness of the bargaining unit is in all respects affirmed.

■ The police board next contends that the word processing machine operators are "confidential" employees and, thus, should be excluded from the bargaining unit. The Missouri Supreme Court articulated certain characteristics of "confidential" employees in *Missouri National Education Association v. Missouri State Board of Mediation*, 695 S.W.2d at 900–01:

[I]n enacting § 105.510, RSMo 1978, the legislature did not intend that management should 'be required to handle labor relations matters through employees who are represented by the union with which the company is required to deal and who in the normal performance of their duties may obtain advance information of the company's position with regard to contract negotiations, the disposition of grievances, or other labor relations matters.' *Westinghouse Electric Corp.* [*v. N.L.R.B.*], 398 F.2d [669] at 670, quoting *The Hoover Company*, 55 N.L.R.B. 1321, 1323 (1944).

Although certain word processing machine operators, particularly those associated with the administrative group, do, from time to time, have access to confidential matters, confidential documents are given directly to the lead word processing specialist who is responsible for dispersing those documents. Upon substantial and competent evidence, the board expressly found that the primary and normal duties of the machine operators are typing and filing. The access to confidential matters by the word processing machine operators is both limited and controlled by the Automation Coordinator and the use of access codes. These express findings of fact support the conclusion that word processing machine operators are not confidential employees.

As its final allegation on appeal, the Commissioners assert that certain employees are supervisors and should be excluded from the bargaining unit. Supervisors, or managerial employees, formulate, determine or effectuate policies on behalf of their employer. *Missouri National Education Association v. Missouri State*

*Board of Mediation,* 695 S.W.2d at 898. To determine the managerial or supervisory status of employees, the Board has set forth seven factors:

(1) The authority to effectively recommend the hiring, promotion, transfer, discipline or discharge of employees; (2) the authority to direct and assign the work force; (3) the number of employees supervised and the number of other persons exercising greater, similar, or lesser authority with respect to the same employees; (4) the level of pay, including an evaluation of whether the supervisor is paid for his skill or for his supervision of employees; (5) whether the supervisor is primarily supervising an activity or is primarily supervising employees; (6) whether the supervisor is a working supervisor or whether he spends a substantial majority of his time supervising employees; (7) the amount of independent judgment and discretion exercised in the supervision of employees. *Western Missouri Public Employees, Local 1812 and Missouri State Council 72, American Federation of State, County, and Municipal Employees v. Jackson County, Missouri Department of Corrections,* Public Case No. 90 (SBM 1976). Both parties accept the appropriateness of the Board's articulated factors. The dispute arises from the Board's application of the seven factors to the facts of the case.

■ The Chief Clerk of the Records and Identification Division is not involved in the hiring, promotions, or transfers of the three employees of whom she is in charge. She spends approximately 5 to 10 percent of her time overseeing other employees and generally does the same work as the other three clerks whom she supervises. She does not regularly assign work and would do so only in the event necessary to meet unusual job requirements. She may issue written reprimands to other employees but only after consultation with her supervisor. Substantial and competent evidence supports the Board's conclusion that the position of Chief Clerk is not supervisory and should be included in the bargaining unit.

The Warehouse Supervisor is responsible for receiving and dispensing all supplies for the Police Department. She has no authority to hire or fire personnel; however, she has limited authority to impose discipline and rearrange work schedules. Five people work under her. She spends approximately 90 percent of her time supervising these individuals and operating the warehouse; approximately 65 percent of this time is used to enter work and purchase orders on the computer. A substantial part of the balance of her time is spent hunting for products and checking on the performance of her subordinates. There is substantial and competent evidence in the record to confirm the Board's findings of fact regarding the warehouse supervisor. The Board determined that the warehouse supervisor is a working foreman and not a true supervisor. The Board's determination is affirmed.

The Lead Multi-Lith Operator manages three print shop employees and two mail room employees. Although he assigns work, he has no authority either to suspend or discipline. He visits the mail room personally only two or three times per month. He spends one-fifth of his time operating equipment, works in the darkroom, and makes sure that the equipment in the darkroom is running properly. He orders supplies. He makes sure that the employees are not having any problems. He checks with his supervisor before suspending or disciplining an employee working under him. The Board properly concluded that the Lead Multi-Lith operator is not supervisory.

The Fleet Services Division Office Supervisor oversees four employees, each with a definite assignment and each doing more or less the same job every day. A superior participates in interviewing applicants for these four positions and makes the hiring decision. The Division Office Supervisor makes few assignments. The classification is properly included in the bargaining unit.

The Fleet Services Division Parts Manager supervises one other employee. Both he and the other employee perform essentially the same jobs. The parts manager has no real authority to discipline. This position is properly included in the bargaining unit.

The Supervisor of Equipment and Satellite Operations directs the work of six to seven employees. He spends approximately 10 percent of his time inspecting the employees at satellite locations, 25 percent of his time checking inventory and ordering supplies, 40 percent of his time taking fuel and oil inventories, and, additionally, spends substantial time operating a computer terminal. He has no actual authority to discipline nor transfer employees and no day-to-day control over the employees. This position is properly included in the bargaining unit.

All orders of the Board of Mediation should be enforced. The judgment is affirmed.

All concur.