Dear Senator Goode and Representative Jacob:
This opinion is in response to your question asking:
 May University of Missouri at Kansas City medical students who meet the requirements for the Higher Education Academic Scholarship Program pursuant to Section 173.250, RSMo Supp. 1988, be denied benefits in their third and fourth year of medical studies because the University classifies such students as professional school students?
You have stated the relevant facts to be as follows:
 Third and fourth year students at UMKC Medical School are being denied scholarship benefits available under Section 173.250, RSMo Supp. 1988, because the school classifies such students as "Professional School" students. These students have not received their undergraduate degree and are, therefore, undergraduate students under the meaning and intent of section 173.250, RSMo Supp. 1988 even though they are in effect working toward both their undergraduate and professional degrees simultaneously.
The Missouri General Assembly created the Higher Education Academic Scholarship Program (hereinafter sometimes referred to as "HE-ASP") in 1986 to entice college-bound Missourians to pursue their undergraduate educations within the State of Missouri. Sections 173.250 to 173.252, RSMo. The program, sometimes known as the "Bright Flight" Scholarship Program, gives $2,000.00 scholarships to academically talented Missourians who attend a college or university in the state and meet certain other requirements.
The General Assembly defined eligibility for both initial and renewal scholarships in Section 173.250.4, RSMo Supp. 1988, which provides, in relevant part, that:
 4. A student shall be eligible for . . . renewed academic scholarship if he or she is in compliance with the eligibility requirements set forth in section 173.215 excluding the requirement of financial need, and in addition meets the following requirements:
* * *
 (2) Academic scholarships are renewable for each of the sophomore, junior and senior years of college study provided the recipient makes satisfactory academic degree progress as a full-time student.
Section 173.215, RSMo 1986, which contains the eligibility requirements for the Financial Assistance Program, another state student grant program, insofar as it is relevant to this opinion, declares that the student must be enrolled "as a full-time undergraduate student," Section 173.215.1(3), and that the scholarship may be renewed until the student obtains "a baccalaureate degree, provided such financial assistance shall not exceed a total of ten semesters or fifteen quarters or their equivalent," Section 173.215.2. Taken together, in terms of longevity, a renewal applicant must meet four requirements. He must (1) be a sophomore, junior or senior, (2) be a full-time undergraduate student, (3) not have earned a baccalaureate degree and (4) have completed not more than ten semesters or fifteen quarters or their equivalent.
In a traditional program, a student who plans to practice medicine attends an undergraduate institution for four years, at which point he obtains his baccalaureate. After graduation, he attends a medical school for four years of medical professional education. In such a case, the student would be eligible for four years of HE-ASP grant money.
UMKC, however, has devised a program of medical education that differs from the traditional program. The UMKC medical program combines the requirements for a four-year baccalaureate and a four-year medical doctorate into six years. UMKC awards both degrees at the end of six years. UMKC classifies its students as undergraduates for two years and thereafter as professional students.
Fortunately, the General Assembly recognized that academia might not confine its programs to traditional strictures. To that end, the General Assembly delegated rulemaking power to the Coordinating Board for Higher Education (hereinafter sometimes referred to as "CBHE") to enable it to "[p]romulgate reasonable rules and regulations for the exercise of its functions and the effectuation of the purposes of this section." Section 173.250.3(1), RSMo Supp. 1988. Rules duly promulgated pursuant to properly delegated authority have the force and effect of law as to both the promulgating agency,Missouri National Education Association v. Missouri StateBoard of Mediation, 695 S.W.2d 894, 897 (Mo. banc 1985), and the general public, Page Western, Inc. v. Community FireProtection District of St. Louis County, 636 S.W.2d 65, 68
(Mo. banc 1982).
When measuring UMKC medical students against the HE-ASP eligibility standards, we will consider the statutory language and the rules of CBHE as they pertain to the HE-ASP. To the extent that this inquiry does not resolve the question, we will presume that the General Assembly intended the CBHE to administer all student financial aid programs consistently, both because Section 173.250 specifically incorporates the eligibility standards from the state Financial Assistance Program at Section 173.215, and because statutes relating to the same subject are to be considered together and harmonized if possible. State ex rel. Lebeau v. Kelly, 697 S.W.2d 312,315 (Mo.App. 1985).
We will next consider the four statutory eligibility requirements previously identified:
1. Sophomore, Junior or Senior.
We have been unable to locate definitions of the terms "freshman", "sophomore", "junior", or "senior" in the statutes, regulations or judicial decisions of the State of Missouri. Absent clear legislative intent to the contrary, a court is likely to construe these words in conformity with their common academic usage. The terms refer to the four individual years of instruction at an undergraduate institution in which a student pursues a bachelor's degree. The term "senior" is sometimes used to describe a person in both his fourth and fifth years of such a program. See 6 CSR 10-2.080(1)(E). This usage is consistent with the requirements of the Financial Assistance Program, Section 173.215.2, which allows up to ten semesters of financial assistance, and assumes that the student can be making satisfactory academic progress during that period. The five-year period is a maximum period of eligibility that may be limited by other legal provisions.
2. Full-time Undergraduate Student.
The second requirement for renewal is that the student be a "full-time undergraduate student." The phrase is not defined as a unit anywhere in the statutes, regulations or case law of the state. Officials at UMKC have advised us that the six-year program combines undergraduate hours with professional school hours in each of the six years. If the words "full-time" modify the word "undergraduate", six-year medical students are never full-time undergraduate students and, thus, are wholly ineligible for the HE-ASP grants. Although the General Assembly has indicated its desire to exclude certain academic programs, see Section 173.215.1(6) (excluding theology and divinity students), we find no evidence of intent to exclude medical students. We presume, therefore, that the General Assembly intended recipients to be both (a) full-time students and (b) undergraduate students, rather than to proscribe any particular course of study.
(a) Full-time Student
A "full-time student" is defined, for purposes of the HE-ASP, as an undergraduate student who is carrying sufficient credit hours to secure the degree for which he is working.6 CSR 10-2.080(1)(F). Under the Financial Assistance Program, a "full-time student" is one who is enrolled in at least twelve semester hours, but not less than the minimum required for the degree program in which the student is enrolled.6 CSR 10-2.020(1)(F). We have been advised that persons enrolled in the six-year medical program carry sufficient hours to be "full-time students" in each of their six years.
(b) Undergraduate Student
The term "undergraduate" is not defined in the Revised Statutes of Missouri, nor is the term defined in the rules or case law in connection with the HE-ASP or the Financial Assistance Program.
By far the largest of the state student financial aid programs is Missouri Student Loan Program, created and administered in Sections 173.095 to 173.186, RSMo. The Missouri General Assembly adopted the Missouri Student Loan Program to conform with the federal program established by the Higher Education Act of 1965, P.L. 89-329, (20 U.S.C. § 1001
et seq.) as amended, and the National Vocational Student Loan Insurance Act of 1965, P.L. 89-287 (20 U.S.C. § 981
et seq., repealed P.L. 90-575, 82 Stat. 1024 (Oct. 16, 1968)). Like the Missouri General Assembly, Congress left many definitions and details of implementation to regulatory bodies, in this case, the Department of Education. The terms "undergraduate", "professional" and "graduate" are not defined in the statutes.
The significance of the distinction between undergraduates and professional or graduate students, as a matter of federal law, is that under the federal student loan program undergraduates may borrow $2,625 in each of the first two years and $4,000.00 per year thereafter, up to a total of $17,250.00. 20 U.S.C. § 1075. Professional and graduate students may borrow $7,500.00 per year up to an aggregate of $54,750.00. Id. These distinctions carry over into the Missouri program. As a result, the longer a student in a six-year medical program remains an undergraduate, the longer he is eligible for the HE-ASP. The sooner he becomes a professional student, the sooner he can use the higher dollar limit under the federal student loan program.
Because of the importance of this distinction, the terms "undergraduate," "graduate" and "professional" are carefully defined in connection with state and federal student loan programs. For purposes of the Missouri Student Loan Program, a graduate or professional student is a student who is:
 (1) enrolled in a program or course above the baccalaureate level at an institution of higher education;
 (2) enrolled in a program leading to a professional degree;
 (3) has completed the equivalent of at least three years of full-time study at an institution of higher education, either prior to entrance into the program or as part of the program itself;
 (4) and is not receiving Title IV funds as an undergraduate student for the same period of enrollment.
6 CSR 10-2.030 (This rule incorporates the Student Loan Manual of the Missouri Student Loan Program. See the Definitions/Index section of the manual). The federal definition, which appears at 34 C.F.R. Section 682.200, is similar.
Students in the UMKC program are enrolled in a course of study above the baccalaureate. Students in the UMKC program are enrolled in a program leading to a professional degree. Setting aside — for the moment — any consideration of Title IV funds, under the CBHE definition, a UMKC student would be a professional student in each of his six years, but for the requirement that a professional student have completed the equivalent of three years of study, whether before or within his professional course of study. UMKC medical students cannot be graduate or professional students until they have completed the equivalent of at least three years of full-time study.
Having established that, for purposes of determining eligibility for student financial aid, certain UMKC medical students are not graduate or professional students, it is necessary to decide whether those persons are "undergraduates." For the purposes of the Missouri Student Loan Program, an undergraduate is:
 A student who is enrolled at a school for the purpose of obtaining a bachelor's degree, certificate, or equivalent certification.
6 CSR 10-2.030 (This rule incorporates the Student Loan Manual of the Missouri Student Loan Program. See the Definitions/Index section of the manual.) Because UMKC medical students also receive a baccalaureate degree at the end of the six-year program, they are undergraduate students during the period of time that they are not graduate or professional students. Thus, leaving aside the issue of Title IV funds, a student enrolled in the UMKC six-year medical program is an undergraduate until he completes the equivalent of three years of full-time study, at which point he becomes a graduate or professional student.
One of the attractions of the UMKC six-year medical program is that it telescopes four years of undergraduate work and four years of medical school into six years. This feature of the program presents an additional issue concerning the point at which the student completes "the equivalent" of three years of full-time study. Fortunately, both6 CSR 10-2.080(1)(F) and 6 CSR 10-2.020(1)(I) indicate that the full-time study requirement is to be construed in the context of the particular degree program. According to those regulations, a student has completed three years of study when he has completed the minimum number of hours to remain in good standing at the end of three years. Officials at UMKC have advised us that students reach this point at the end of three years. Thus, absent any consideration of Title IV funds, a student enrolled in the UMKC six-year medical program is an undergraduate until he completes his third year of the program.
The final part of the definition of a graduate or professional student is that the person in question not be receiving Title IV funds as an undergraduate. A person who might otherwise fit the definition of a graduate or professional student would fail to meet the test, and hence remain an undergraduate student, if he receives Title IV funds as an undergraduate.
"Title IV" appears to be a reference to a portion of the Higher Education Act of 1965, P.L. 89-329, (20 U.S.C. § 1070
et seq.) as amended. Because qualification for Title IV funds as an undergraduate is a federal question, the federal definition of "undergraduate," which differs slightly from the state definition, controls eligibility. The federal regulations provide that an undergraduate student is:
 A student who is enrolled at a school in a course or program of study, at or below the baccalaureate level, that usually does not exceed four academic years, or is up to five academic years in length and is designed to lead to a first degree. A student enrolled in any other length program is considered an undergraduate student for only the first four academic years.
34 C.F.R. Section 682.200. As a matter of federal law, a student who is enrolled in both baccalaureate and graduate programs is an undergraduate and thereby eligible for Title IV undergraduate funds for four years. Combining the two definitions, a student enrolled in the dual degree program becomes a graduate or professional student after three years, unless in his fourth year, he seeks and obtains Title IV funds as an undergraduate. As a result, a fourth-year student may decide (1) not to participate in Title IV programs, and become a graduate or professional student; (2) to participate in Title IV programs as a graduate or professional student, thereby becoming a graduate or professional student; or (3) to participate in Title IV programs as an undergraduate student, in which case he does not become a graduate or professional student, but rather retains his undergraduate status.
3. Not have earned a baccalaureate degree.
The third portion of the definition of eligibility is that the student must not have received a baccalaureate degree. Officials at UMKC have advised us that participants in the six-year medical program earn a baccalaureate after six years. As a result, this requirement puts no additional limitations upon students in the six-year medical program.
4. Completed not more than ten semesters or fifteenquarters or their equivalent.
Although the term "semester" is not defined in the statutes, rules or case law pertaining to student aid, the term is commonly used to refer to each of two periods in an academic year. Similarly, "quarter" is commonly understood to refer to one of four periods in an academic year. Officials at UMKC have advised us that students in the six-year medical program attend school for two long sessions and one summer session each year. This calendar does not mesh conveniently with either ten semesters or fifteen quarters. Of the two standards, the quarter system is better capable of measuring year-round schooling. A student who attended a traditional school would complete his baccalaureate in four years at the rate of three quarters per year, making twelve quarters. He would take another twelve quarters to complete his medical education. He would acquire both degrees at the end of twenty-four quarters.
A student in the six-year medical program of UMKC takes the same number of courses as he would in a traditional program, but finishes both degrees after six years of year-round instruction. In each year, therefore, he completes the equivalent of four quarters of instruction. The fifteen quarters would expire in the course of a student's fourth year of enrollment. Thus, the ten-semester/fifteen-quarter rule limits HE-ASP grant money to students who are in their first four years of the six-year medical program. As a result, UMKC medical students meet this test during their first four years of training. Because a student who is enrolled in the UMKC program cannot be an undergraduate for more than four years, this requirement puts no additional limitations upon those student's HE-ASP eligibility.
CONCLUSION
It is the opinion of this office that medical students enrolled in the six-year program at the University of Missouri at Kansas City are eligible for benefits under the Higher Education Academic Scholarship Program authorized by Sections173.250 to 173.252, RSMo Supp. 1988, until they become graduate or professional students. Six-year medical students become graduate or professional students after completing three years of the program unless, by participating in a federal Title IV financial aid program as undergraduate students, they retain their undergraduate status for a fourth year.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General